CIV-08-5150 GBD ECF CASE

## LAW OFFICES OF
## UGO UZOH, P.C.

255 LIVINGSTON STREET, 4TH FL.
BROOKLYN NY, 11217
PHONE: (718) 874-6045
Attorneys for plaintiffs

-----------------------------------X------------------------------------

DESMOND LEUNG,
WILTON JONES,

          Plaintiffs,

     against

NEW YORK UNIVERSITY,
NEW YORK UNIVERSITY MEDICAL
CENTER,
RICHARD COHEN,
DANIEL BENSIMON,
JESSICA GARCIA,
CAROL STRAPKAY,
GINELLE ANDREWS,
SABRINA STINES,
JEAN GOLDBERG,
          Defendant(s).

-----------------------------------X------------------------------------

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE No.:

**COMPLAINT**

**PLAINTIFFS DEMAND**
TRIAL BY JURY

      TAKE NOTICE, the Plaintiffs, DESMOND LEUNG and WILTON JONES, hereby appear in this action by their attorneys, Ugo Uzoh, P.C., and demand that all papers be served upon them, at the address below, in this matter.

      Plaintiffs, Desmond Lueng and Wilton Jones, collectively referred to herein as the plaintiffs, by their attorneys, Ugo Uzoh, P.C., complaining of the defendants, New York University, New York University Medical Center, Richard Cohen, Daniel Bensimon, Jessica Garcia, Carol Strapkay, Ginelle Andrews, Sabrina Stines, and Jean Goldberg, collectively referred to herein as the defendants, upon information and belief allege as follows:

## NATURE OF THE ACTION

1. This is an action at law to redress retaliatory and discriminatory terms, conditions and privileges of employment on the basis of Race in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C.§ 1981 et seq., Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq., 1978, 1983 [and § 1985]; the New York State Executive Law (Human Rights Law) §296; the Administrative Code of the City of New York, §§8-107.1(a) et seq., the Common Law Tortuous Interference with Contractual Relations, and conspiracy in violation of 42 U.S.C. 1985.

2. This is an action to further seek compensation for defamation arising from false statements and actions and the resultant wrongful termination in violation of public policy.

## JURISDICTION

3. The jurisdiction of this Court is invoked under the aforementioned Statutes and under 28 U.S.C. § 1331.

4. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this Court's jurisdiction are based on the Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear state law causes of action. The events, parties, transactions, and injuries that form the basis of plaintiffs' federal claims are identical to the events, parties, transactions, and injuries that form the basis of plaintiffs' claims under applicable State and City laws.

5. The unlawful practices alleged in this complaint occurred within the Southern District of New York, and venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c).

## PARTIES

6. At all times relevant and material to this case, plaintiff Desmond Leung, who is Black, resided and still resides in Brooklyn, New York, and was employed by defendant New York University Medical Center as an Area Maintenance Worker.

7.   At all times relevant and material to this case, plaintiff
     Wilton Jones, who is Black, resided and still resides in
     Staten Island, New York, and was employed by defendant New
     York University Medical Center as an Area Maintenance
     Worker.

8.   At all times relevant and material to this case, defendant
     New York University is a New York domestic corporation,
     with headquarters and principal place of business located
     within this District at Washington Square Center in New
     York, New York. Defendant New York University is composed
     of 14 schools, colleges, and divisions including defendant
     New York University Medical Center, which is located within
     this District at 545 First Avenue, New York, New York.

9.   At all times relevant and material to this case, defendant
     Richard Cohen, who is White, was an employee of defendant
     New York University Medical Center, and was Vice President
     of the Facilities Management Department.

10.  At all times relevant and material to this case, defendant
     Daniel Bensimon, who is White, was an employee of defendant
     New York University Medical Center, and was Manager of the
     Area Maintenance and Plumbing Department of the Facilities
     Management Department.

11.  At all times relevant and material to this case, defendant
     Jessica Garcia, a White Hispanic, was an employee of
     defendant New York University Medical Center.

12.  At all times relevant and material to this case, defendant
     Carol Strapkay, who is White, was an employee of defendant
     New York University Medical Center.

13.  At all times relevant and material to this case, defendant
     Ginelle Andrews was an employee of defendant New York
     University Medical Center.

14.  At all times relevant and material to this case, defendant
     Sabrina Stines was an employee of defendant New York
     University Medical Center.

15.  At all times relevant and material to this case, defendant
     Jean Goldberg was an employee of defendant New York
     University Medical Center.

16.  At all times relevant and material to this case defendants New York University and New York University Medical Center were employers with over 16,000 employees.

## COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES

17.  Plaintiffs timely filed charges of discrimination against the defendants with the U.S. Equal Employment Opportunity Commission ("EEOC") within three hundred days of the last act of discrimination complained of herein in accordance with the requirements of the Civil Rights Act of 1964. Plaintiff Desmond Leung's Federal Charge No. is 520-2008-00704 and plaintiff Wilton Jones' Federal Charge No. is 16G-2007-02411.

18.  Plaintiffs received DISMISSAL AND NOTICE OF RIGHTS (a/k/a Notice of Right to Sue), dated May 19, 2008 (for plaintiff Desmond Leung) and May 7, 2008 (for plaintiff Wilton Jones), and this action is brought within ninety days of receipt of said Notices of Right to Sue, true and accurate copies of which are attached hereto as Exhibits "A" and "B".

19.  Plaintiffs will serve a copy of this complaint upon the City Corporation Counsel's Office as well as upon the New York Commission on Human Rights in accordance with the requirements of the Administrative Code of the City of New York § 8-502.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CAUSES OF ACTION

20.  At all times relevant and material to this case, plaintiffs, were both employed by defendant New York Medical Center as Area Maintenance Workers. Defendants employed approximately ten (10) Maintenance Workers including the plaintiffs. As at the time when plaintiffs were still employed by the defendants, about three (3) of those Maintenance Workers were Black including the plaintiffs. At some point, however, plaintiffs were the only Black Maintenance Workers supervised by defendant Daniel Bensimon. Plaintiff Desmond Leung was hired on or about September 25, 2002, while plaintiff Wilton Jones was hired on or about January 30, 2002.

21.  At sometime prior to May 12, 2004, plaintiff Wilton Jones applied for a painter position believing that he was the

most qualified candidate in light of his lengthy painting experience and skills. On or about May 12, 2004, plaintiff Wilton Jones learned that defendants had offered the painter position to a White candidate. Therefore, plaintiff Wilton Jones alleged that he was discriminated against on the basis of his race and consulted with his then union, Local 810 International Brotherhood of Teamsters, ("Union") who counseled him to file a grievance and or complaint. On or about May 12, 2004, plaintiff Wilton Jones filed a grievance and or complaint with the Union.

22. During the period when they were employed by the defendants, plaintiffs were close personal friends. Defendant Daniel Bensimon, on numerous occasions, admonished plaintiff Desmond Leung for his friendship and association with plaintiff Wilton Jones. Following the May 12, 2004 complaint filed by plaintiff Wilton Jones with the Union, defendant Daniel Bensimon, in pursuit of an effort to find fault that may lead to termination of plaintiffs, began to monitor and intensely scrutinize each and every action taken by plaintiffs. On one particular occasion, defendant Daniel Bensimon went after the plaintiffs at around 11:00 AM during their morning break. When defendant Daniel Bensimon found plaintiffs sitting in a classroom, he accused them of sleeping during their normal work schedule even though the plaintiffs were wide awake and on their morning break at that time.

23. Prior to May 12, 2004, both plaintiffs' performance ratings and or job evaluations were always satisfactory. Subsequent to May 12, 2004, however, defendants placed both plaintiffs under heightened scrutiny and increased surveillance. Defendants aggressively sought out, documented, monitored, and pursued every minor and trivial issue and or event concerning the plaintiffs, and in most cases elevated those minor and trivial issues and or events. None of the White employees were placed under such scrutiny and or increased surveillance.

24. In 2006, defendant Daniel Bensimon assigned plaintiff Desmond Leung to work in defendants' Mechanical Room all by himself despite the fact that the normal practice at the time was to assign about four (4) or five (5) employees to the Mechanical Room. Even though plaintiff Desmond Leung was the only employee assigned to the Mechanical Room, defendants still set higher expectations for him and demanded more results from him than that usually

accomplished by multiple employees. Said action of defendants was premeditated, and designed to find fault that may lead to the termination of said plaintiff. During this period, plaintiff Desmond Leung complained about his assignment, which he then thought was attributable to the fact that he is Black, and did threaten that he would file a complaint for racial discrimination.

25. On or about May 19, 2006, plaintiff Wilton Jones applied again for another painter position. As in the past, defendants bypassed plaintiff Wilton Jones and offered the painter position to another White candidate. Therefore, on or about August 9, 2006, plaintiff Wilton Jones filed a grievance and or complaint with the Union. Additionally, on or about September 6, 2006, plaintiff Wilton Jones filed complaints with the EEOC (EEOC Charge Number 16GA604566) and the New York State Division of Human Rights alleging discrimination on the basis of race.

26. After the above events, defendants intensified their efforts and actions against plaintiffs.

27. On or about March 26, 2007, defendants terminated plaintiff Wilton Jones for sexual harassment. Thereafter, plaintiff Wilton Jones filed another complaint with the EEOC (EEOC Charge Number 16GA702411) and the New York State Division of Human Rights alleging discrimination on the basis of race and retaliation.

28. The sexual harassment charges against plaintiff Wilton Jones stem from an alleged incident that occurred on March 15, 2008, and published by the defendants at various times thereafter including an account of the alleged sexual harassment incident provided by defendant Sabrina Stines to Dennis Figueroa, an employee of the defendants, on or about the same date. In accordance with a statement published by defendant Ginelle Andrews to defendant Jean Goldberg on or about March 19, 2007, plaintiff Wilton Jones made eye contact with both her and defendant Sabrina Stines and said to them "I knew one day you'll come to me." Defendant Ginelle Andrews further alleged that plaintiff Wilton Jones made the following remarks to defendant Sabrina Stines: "no no. . . it's okay. . . I'm not going to hurt you honey. . . I know exactly where to do my spanking." Defendant Ginelle Andrews stated that the above remarks were "accompanied by an inappropriate stare towards [defendant Sabrina Stines'] derriere." Defendant Ginelle Andres further indicated that

plaintiff Wilton Jones "persisted to make constant eye contact with [defendant Sabrina Stines]." Further, in an email message to defendant Daniel Bensimon dated March 16, 2007, defendant Jean Goldberg accused plaintiff Wilton Jones of sexual harassment and alleged that plaintiff Wilton Jones "made comments (e.g., about spanking) and used body language that was offensive and demeaning . . . ." Defendant Jean Goldberg further indicated that plaintiff Wilton Jones made "sexual comments . . . and inappropriate sexual body language."

29.  The allegations of sexual harassment against plaintiff Wilton Jones were later reviewed by an arbitrator in a complaint brought by the Union against the defendants. In a decision issued on November 5, 2007, the arbitrator determined that the allegations were baseless and unsupportable, and reinstated plaintiff Wilton Jones effective November 2007.

30.  That defendants statements were made without any just cause or truth to the statements. Additionally, defendants made such statements maliciously, knowing said statements to be absolutely false. Further, that defendants made said false and malicious statements with the sole intent of exposing plaintiff Wilton Jones to public contempt, hatred, ridicule, aversion, disgrace and to induce an evil opinion of the plaintiff and cause him to be shunned or avoided and injure him in his employment or occupation.

31.  That defendant Richard Cohen later interviewed defendants Ginelle Andrews, Sabrina Stines, Jean Goldberg and other employees of the defendants regarding the alleged sexual harassment incident. That even though defendant Richard Cohen knew, or should have known from his interviews and investigations, that the above statements were false, defendants still relied upon the false statements to conclude that plaintiff Wilton Jones sexually harassed defendant Sabrina Stines and subsequently published such false allegations to several other employees knowing fully well that the allegations were false.

32.  That in the past when sexual harassment allegations were brought against a former White co-worker (Area Maintenance Worker) of the plaintiffs, defendants did not terminate said White employee but merely reassigned him to another unit and or division.

33. On or about July 26, 2007, defendants terminated plaintiff Desmond Leung for sexual harassment. Thereafter, plaintiff Desmond Leung filed a complaint with the EEOC alleging discrimination on the basis of race and retaliation.

34. The sexual harassment charges against plaintiff Desmond Leung stem from allegations contained in written statements and or memorandums from defendants Jessica Garcia and Carol Strapkay dated May 21, 2007 and May 22, 2007, respectively, and published to Mark Parauda, an employee of the defendants, on or about June 7, 2007. In their efforts to find fault upon which to rely in terminating plaintiffs' employment, defendant Daniel Bensimon instructed and conspired with defendants Jessica Garcia and Carol Strapkay in the preparation and publishing of said written statements and or memorandums.

35. Among other things, defendant Jessica Garcia asserted in her memorandum that she was sexually harassed by plaintiff Desmond Leung on numerous occasions over a period of time. Specifically, defendant Jessica Garcia stated in her memorandum that on or about May 18, 2007, plaintiff Desmond Leung ran amuck and was singing loudly "I want pussy, give me pussy" and "I want the pussy give me the pussy!" in the hallway, in front of the carpenter's shop, and inside the stockroom where she and defendant Carol Strapkay were located, and in her presence and in the presence and to the hearing of everyone present including defendant Carol Strapkay and about two (2) or more other employees of the defendants. Additionally, defendant Jessica Garcia asserted that plaintiff Desmond Leung had called her on numerous occasions at #5275 asking her to "Repeat my calls in Spanish cause it sounds sexy" and that plaintiff Desmond Leung had called her on one occasion "around 3:20 making orgasmic noises."

36. Defendant Carol Strapkay on her part asserted in her memorandum that she was at her desk on May 18, 2007, answering the phones which, according to her, were extremely busy on that day when plaintiff Desmond Leung stood next to her while she was still answering the phones but "could hear him singing the word "Pussy" over and over again."

37. That defendants statements were made without any just cause or truth to the statements. Additionally, defendants made

such statements maliciously, knowing said statements to be absolutely false. Further, that defendants made said false and malicious statements with the sole intent of exposing plaintiff Desmond Leung to public contempt, hatred, ridicule, aversion, disgrace and to induce an evil opinion of the plaintiff and cause him to be shunned or avoided and injure him in his employment or occupation.

38. That defendant Richard Cohen later interviewed defendants Jessica Garcia and Carol Strapkay and the other employees identified by defendant Jessica Garcia in her memorandum. That even though defendant Richard Cohen knew, or should have known from his interviews and investigations, that the above statements were false, defendants still relied upon the false statements to conclude that plaintiff Desmond Leung sexually harassed defendant Jessica Garcia and subsequently published such false allegations to several other employees knowing fully well that the allegations were false.

39. That in the past when sexual harassment allegations were brought against a former White co-worker (Area Maintenance Worker) of the plaintiffs, defendants did not terminate said White employee but merely reassigned him to another unit and or division.

40. That the conduct of defendants created a hostile work environment for plaintiffs, degraded, ridiculed and exposed plaintiffs to physical and emotional harm.

41. On or about May 27, 2008, plaintiff Wilton Jones was discharged and or constructively terminated by defendants.

42. That plaintiffs' proprietary right to their good name and reputation was improperly and unlawfully attacked.

43. That the actions of the defendants were malicious, illegal, unlawful, and directed at depriving the plaintiffs of their constitutional rights and their good name, and were in violation of public policy.

44. Plaintiffs were and are still traumatized by their treatment at the hands of the defendants. They suffered and continue to suffer substantial financial hardship and severe emotional and mental distress as a result of the actions that gave rise to this lawsuit.

45. That this action has been commenced within one year after the publication of the false statements and within ninety days of receipt of said Notices of Right to Sue.

## AS A FIRST CAUSE OF ACTION:

42 U.S.C § 1981 - against defendants

46. Plaintiffs hereby restate paragraphs 1-45 of this complaint, as though fully set forth below

47. Plaintiffs allege that defendants discriminated and retaliated against them on the basis of race with malice or with reckless indifference to their Federal-protected rights.

48. Plaintiffs allege that defendants, in furtherance of their policy and practice and in their respective individual capacity, violated plaintiffs' rights to be free from discrimination in the making and enforcement of contracts on the basis of race, in violation of 42 U.S.C. § 1981.

49. Defendants violated plaintiff Desmond Leung's rights to be free from discrimination in the making and enforcement of contracts on the basis of race, in violation of 42 U.S.C. § 1981.

50. Defendants violated plaintiff Wilton Jones' rights to be free from discrimination and retaliation in the making and enforcement of contracts on the basis of race, in violation of 42 U.S.C. § 1981.

## AS A SECOND CAUSE OF ACTION:

42 U.S.C. § 2000e et seq. - against defendants

51. Plaintiffs hereby restate paragraphs 1-50 of this complaint, as though fully set forth below

52. Defendants intentionally engaged in unlawful employment practices involving plaintiffs because of their race, color, and national origin by refusing to promote plaintiffs, conspired to maliciously bring false allegations against the plaintiffs so as to terminate their employment, unlawfully terminated plaintiffs' employment, or otherwise denied them the privileges of employment available to other White employees.

53. Plaintiffs allege that defendants have a policy, pattern and practice of intentional and willful exclusion of minorities and non-White employees from promotions.

54. Defendants intentionally discriminated against plaintiffs in connection with promotion, compensation, terms, conditions and privileges of employment or limited, segregated, or classified plaintiffs in a manner that would deprive or tend to deprive them of any employment opportunity or adversely affect their status because of their race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

55. Defendants intentionally classified plaintiffs in a manner that deprived them of equal employment opportunity that was provided to other White employees similarly situated, in violation of Title VII.

56. Plaintiffs have been damaged and have suffered severe emotional distress as a result of the discrimination alleged herein.

## AS A THIRD CAUSE OF ACTION:

Retaliation and Harassment – against defendants

57. Plaintiffs hereby restate paragraphs 1-56 of this complaint, as though fully set forth below

58. Plaintiffs allege that defendants instituted a campaign of retaliation and harassment against them, which include but not limited to: unfair admonishment and criticisms, selective and intense scrutiny, pervasive monitoring and surveillance, unnecessary disciplinary actions, harassment and intimidation, unsubstantiated allegations, and unjustified termination. This retaliation and harassment was and is due to plaintiffs exercising their rights by opposing discriminatory practices, for filing charge/complaints with their Union, for participating in EEOC investigation, and for filing a charge of discrimination.

## AS A FOURTH CAUSE OF ACTION:

New York State Executive Law (Human Rights Law) §296 – against defendants

59. Plaintiffs hereby restate paragraphs 1-58 of this complaint, as though fully set forth below

60. In light of the foregoing therefore, the defendants subjected plaintiffs to a discriminatory hostile work environment on account of their race, in violation of the New York State Executive Law (Human Rights Law) §296.

## AS A FIFTH CAUSE OF ACTION:

New York State Executive Law (Human Rights Law) §296 – against defendants

61. Plaintiffs hereby restate paragraphs 1-60 of this complaint, as though fully set forth below

62. The defendants terminated plaintiffs from employment on account of their race, in violation of the New York State Executive Law (Human Rights Law) §296.

## AS A SIXTH CAUSE OF ACTION:

New York State Executive Law (Human Rights Law) §296 – against defendants

63. Plaintiffs hereby restate paragraphs 1-62 of this complaint, as though fully set forth below

64. The defendants retaliated against and terminated plaintiffs from employment for complaining about discriminatory work environment on account of their race, in violation of the New York State Executive Law (Human Rights Law) §296.

## AS A SEVENTH CAUSE OF ACTION:

Administrative Code of the City of New York, §8-107.1(a) et seq. – against defendants

65. Plaintiffs hereby restate paragraphs 1-64 of this complaint, as though fully set forth below

66.   In light of the foregoing therefore, the defendants subjected plaintiffs to a discriminatory hostile work environment on account of their race, in violation of the Administrative Code of the City of New York, §§8-107.1(a) et seq.

## AS A EIGHT CAUSE OF ACTION:

Administrative Code of the City of New York, §8-107.1(a) et seq. - against defendants

67.   Plaintiffs   hereby   restate   paragraphs   1-66   of   this complaint, as though fully set forth below

68.   The defendants terminated plaintiffs from employment on account of their race, in violation of the Administrative Code of the City of New York, §8-107.1(a) et seq.

## AS A NINTH CAUSE OF ACTION:

Administrative Code of the City of New York, §8-107.1(a) et seq. - against defendants

69.   Plaintiffs   hereby   restate   paragraphs   1-68   of   this complaint, as though fully set forth below

70.   The defendants retaliated against and terminated plaintiffs from employment for complaining about discriminatory work environment on account of their race, in violation of the Administrative Code of the City of New York, §8-107.1(a) et seq.

## AS A TENTH CAUSE OF ACTION:

Common Law Tortuous Interference with Contractual Relations - against defendant Richard Cohen

71.   Plaintiffs   hereby   restate   paragraphs   1-70   of   this Complaint, as though fully set forth below

72.   Plaintiffs are members of the Union which had an employment contract with defendants New York University and New York University Medical Center. Thus, plaintiffs had reasonable expectation of the security of their employment. Defendant Richard Cohen knew of the contract between the Union and the defendants, but intentionally and arbitrarily procured

the breach of the contract by summarily terminating
plaintiffs' employment thereof.

73.   Defendant Richard Cohen was not a party to said contract,
thus in terminating plaintiffs' employment arbitrarily, he
acted in violation of a duty owed to plaintiffs by virtue
of a special and confidential relationship between himself
and plaintiffs.

74.   In terminating plaintiffs' employment on the basis of race,
defendant Richard Cohen acted in bad faith, self-interest,
malice and personal animosity towards plaintiffs, and thus
exceeded the limits of his authority. With reference to the
foregoing therefore, his actions were neither justified nor
taken in the interest of defendants New York University and
New York University Medical Center.

75.   In terminating plaintiffs' employment, defendant Richard
Cohen acted outside the boundaries of his employment, and
intentionally and tortuously interfered with said contract
and plaintiffs' employment with defendants New York
University and New York University Medical Center, and by
so doing became liable to plaintiffs for the Common Law
tort of Tortuous Interference with Contractual Relations.

### AS A ELEVENTH CAUSE OF ACTION:

42 U.S.C. § 1985 – against defendants

76.   Plaintiffs   hereby   restate   paragraphs   1-75   of   this
complaint, as though fully set forth below

77.   In their efforts to find fault upon which to rely in
terminating plaintiffs' employment and in their efforts to
impede and hinder the due course of justice, defendants
placed plaintiffs under heightened scrutiny and increased
surveillance. Defendants aggressively sought out,
documented, monitored, and pursued every minor and trivial
issue and or event concerning the plaintiffs.

78.   After plaintiff Wilton Jones filed his complaint with the
Union, defendant Daniel Bensimon started going around and
inquiring from the other employees as to whether they have
any complaints or negative information against the
plaintiffs, and started instructing those other employees
to document their complaint against plaintiffs in writing.
When defendant Jessica Garcia informed defendant Daniel

Bensimon that she has a complaint against plaintiff Desmond Leung, defendant Daniel Bensimon instructed defendant Jessica Garcia to put her complaint in writing and thereafter conspired with defendants Jessica Garcia and Carol Strapkay to prepare and publish their written statements and or memorandums alleging that defendant Jessica Garcia was sexually harassed by plaintiff Desmond Leung.

79.  During the same period, defendant Richard Cohen was going around instructing and or suggesting to other employees incriminating words or other information that could be used against the plaintiffs to terminate their employment.

80.  In light of the foregoing therefore, the defendants engaged in a conspiracy designed to deprive plaintiffs of their constitutional and federal rights in violation of 42 U.S.C. § 1985.

## AS A TWELFTH CAUSE OF ACTION:

Defamation - against defendants

81.  Plaintiffs hereby restate paragraphs 1-80 of this complaint, as though fully set forth below

82.  That by reason of defendants statements and actions, plaintiff Desmond Leung has been injured in his good name and reputation and has suffered and continues to suffer great pain and mental anguish and has been held and continues to be held in ridicule and contempt by his co-workers, friends, acquaintances, and the public.

83.  That by reason of defendants statements and actions, plaintiff Wilton Jones has been injured in his good name and reputation and has suffered and continues to suffer great pain and mental anguish and has been held and continues to be held in ridicule and contempt by his co-workers, friends, acquaintances, and the public.

## AS A THIRTEENTH CAUSE OF ACTION:

Intentional Infliction of Emotional Distress - against defendants

84.  Plaintiffs hereby restate paragraphs 1-83 of this complaint, as though fully set forth below

85. Defendants engaged in extreme and outrageous actions and conducts, intentionally and recklessly causing severe emotional distress to plaintiffs.

86. Plaintiffs' emotional distress has damaged their personal and professional life because of the severe mental pain and anguish which were inflicted through false and malicious statements and actions by defendants.

## RESPONDEAT SUPERIOR

87. Defendants, their officers, agents, servants, and employees are responsible for the intentional infliction of emotional distress suffered by plaintiffs, defendants New York University and New York University Medical Center, as employers of the other defendants, are responsible for their wrongdoing under the doctrine of respondeat superior.

## DAMAGES

88. As a result of the discriminatory conducts of defendants described hereinabove, plaintiffs seek the following damages from defendants:

   a.  Back pay and benefits from the date plaintiff Wilton Jones was denied promotion till the determination of this suit;

   b.  Front pay, including benefits, that plaintiff Wilton Jones would have been entitled to had he been promoted to the position sought from the determination of this suit to such a time as the Court may deem just to make him whole;

   c.  All reasonable and necessary Attorneys' fees incurred by or on behalf of plaintiffs;

   d.  All reasonable and necessary costs incurred in pursuit of this suit;

   e.  Interests;

   f.  Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses; and

g.  Adequate compensation to plaintiffs for the intentional infliction of emotional distress due to defendants' extreme and outrageous conducts.

## PUNITIVE DAMAGES

89. Plaintiffs would further show that the acts and omissions of defendants complained of herein were committed with malice or reckless indifference to the protected rights of the plaintiffs, in violation of Title VII and 42 U.S.C. § 1981. In order to punish defendants for engaging in unlawful employment practices and to deter such actions and/or omissions in the future, plaintiffs also seek recovery from defendants for punitive damages.

## SPECIFIC RELIEF

90. Plaintiffs seek an order of injunction prohibiting defendants from engaging in unlawful employment practices.

**WHEREFORE,** plaintiffs respectfully request judgment against the defendants as follows:

1.  **Under § 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, and the City and State Administrative Laws, against all defendants:**

    a.  an order granting plaintiffs back pay, front pay, pay differential, reimbursement for fringe benefits, bonuses and other appropriate relief to redress the discriminatory practices complained of herein, in the amount to be proved at trial and in accordance with proof;
    b.  ordering defendants to pay plaintiffs $500,000.00 (Five Hundred Thousand Dollars) as compensatory damages for hostile work environment, pain and suffering, and for the humiliation, emotional distress and mental anguish inflicted upon plaintiffs as a result of the discrimination;
    c.  in light of the foregoing, awarding Plaintiffs punitive damages against the defendants in the amount of $5,000,000.00 (Five Million Dollars);
    d.  awarding attorneys fees, costs and disbursements of this action;
    e.  awarding such other relief as the Court may deem just and proper under the circumstances.

2. **Under Common Law Tortuous Interference with Contractual Relations, against defendant Richard Cohen only:**

Awarding plaintiffs such damages as may be proved at trial, including back pay, front pay, compensatory damages and punitive damages as well as costs and disbursements of this action.

3. **Under 42 U.S.C. § 1985, against all defendants**

Awarding plaintiffs such damages as may be proved at trial, including compensatory damages and punitive damages as well as attorneys fees, costs and disbursements of this action.

4. **Under Defamation - against all defendants**

Awarding plaintiffs such damages as may be proved at trial, including compensatory damages and punitive damages as well as attorneys fees, costs and disbursements of this action.

5. **Intentional Infliction of Emotional Distress - against all defendants**

Awarding plaintiffs such damages as may be proved at trial, including compensatory damages and punitive damages as well as attorneys fees, costs and disbursements of this action.

Dated:    June 3, 2008
          Brooklyn, New York

                    Respectfully Submitted

          By:   Ugochukwu Uzoh, Esq. [UU-9076]
                255 Livingston Street, 4th Floor
                Brooklyn, New York 11217
                Tel. No.  : (718) 874-6045
                Fax No.   : (718) 576-2685

    Co-Counsel      Okechukwu Valentine Nnebe [ON6147]
                    255 Livingston Street, 4th Floor
                    Brooklyn, New York 11217
                    Tel. No.  : (718) 874-6421
                    Fax No.   : (718) 576-2685

**EXHIBIT A**

EEOC Form 161 (1/08)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Mr. Desmond Leung**              From:  **New York District Office**
    **1271 East 52nd Street**              **33 Whitehall Street, 5th Floor**
    **Brooklyn, NY 11234**              **New York, NY 10004**

|  | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| **520-2008-00704** | **Joan Marchese, Senior Investigator** | **(212) 336-3765** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (*briefly state*)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr., District Director**

5/19/08
*(Date Mailed)*

cc:    New York University Medical Center

**EXHIBIT B**

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Wilton Jones**<br>**7 Post Lane**<br>**Staten Island, NY 10303** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2007-02411** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*    **Charging Party wishes to pursue matter in Federal District Court.**

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

| Enclosures(s) | **Spencer H. Lewis, Jr.,**<br>**Director** | MAY 0 7 2008<br>*(Date Mailed)* |
|---|---|---|

cc: **NEW YORK UNIVERSITY MEDICAL CENTER**<br>**Office of Legal Counsel Attn:**<br>**Annette B. Johnson, Senior Counsel**<br>**3 Park Ave., 15th Fl.**<br>**New York, NY 10016**    Ugoehukwu Uzon, Esq.<br>255 Livingston St., 4th Fl.<br>Brooklyn, NY 11217

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DESMOND LEUNG AND WILTON JONES,

                                        Plaintiff(s),

                    against

NEW YORK UNIVERSITY, NEW YORK UNIVERSITY MEDICAL CENTER,
RICHARD COHEN, DANIEL BENSIMON, JESSICA GARCIA, CAROL
STRAPKAY, GINELLE ANDREWS, SABRINA STINES, AND JEAN
GOLDBERG,

                                        Defendant(s).

## SUMMONS & COMPLAINT
## DEMANDS TRIAL BY JURY

### LAW OFFICES OF UGO UZOH, P.C.
255 LIVINGSTON STREET, 4TH FLOOR, BROOKLYN, NY 11217
TELEPHONE: (718) 874-6045; FACSIMILE: (718) 576-2685
EMAIL: u.ugochukwu@yahoo.com

To:

Defendant(s)/Attorney(s) For Defendant(s).

Service of a copy of the within is hereby admitted

Dated:_____

Attorney(s) For:_____