EDWARDS ANGELL PALMER & DODGE LLP
David R. Marshall
Robert J. Brener
Attorneys for New York University and
New York University Hospitals Center
750 Lexington Avenue
New York, New York 10022.6030
212.308.4411

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DESMOND LEUNG and WILTON JONES,

                 Plaintiffs,

          -against-

NEW YORK UNIVERSITY, NEW YORK UNIVERSITY
MEDICAL CENTER, RICHARD COHEN, DANIEL
BENSIMON, JESSICA GARCIA, CAROL STRAPKAY,
GINELLE ANDREWS, SABRINA STINES, and JEAN
GOLDBERG,

               Defendants.
_____

08 CV 5150 (GBD)

**DECLARATION OF
DAVID R. MARSHALL**

DAVID R. MARSHALL declares:

1.     I am a member of the bar of the State of New York and this Court and the law

firm of Edwards Angell Palmer & Dodge LLP, counsel for defendants New York University and

NYU Hospitals Center (incorrectly named as New York University Medical Center).  I make this

declaration in support of their motion for partial dismissal of the complaint.

2.     Annexed as Exhibit A is a true and accurate copy of plaintiff Wilton Jones'

September 2006 New York State Division of Human Rights charge

3.     Annexed as Exhibit B is a true and accurate copy of Mr. Jones' April 2007 New

York State Division of Human Rights charge.

4.      Annexed as Exhibit C is a true and accurate copy of an arbitrator's decision dated November 5, 2007 regarding Jones' grievance concerning his March 26, 2007 termination.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Dated:  New York, N.Y.
        September 5, 2008

DAVID R. MARSHALL

# EXHIBIT A

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK : EXECUTIVE DEPARTMENT

---

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

WILTON JONES

                  Complainant

          v.

NEW YORK UNIVERSITY MEDICAL CENTER

                  Respondent

---

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10113677**

Federal Charge No. 16GA604566

    I, Wilton Jones, residing at 7 Post Lane, Staten Island, NY, 10303, charge the above named respondent, whose address is Office of Legal Counsel, Attn: Annette B. Johnson, Senior Counsel, 3 Park Avenue, 15th floor, New York, NY, 10016 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of race/color.

    Date most recent or continuing discrimination took place is 5/19/2006.

    The particulars are:

  1.  I am Black.  Because of this, I have been subject to unlawful discriminatory actions.

  2.  On January 30, 2001, I was hired by the respondent as an Area Maintenance Worker in the Facilities Management Department. Daniel Bensimone (Caucasian) is my immediate supervisor. Richard Cohen (Caucasian) is the Department Head.  My performance has always been satisfactory.

  3.  Beginning in 2004 and continuing until May 19, 2006, I have been denied a promotion to the position of Painter.  The persons that the respondent has hired as Painters are Caucasian. These individuals were hired over me despite the fact that I worked as a Painter for the City of New York for seven years.  I assert that my qualifications for the position were equal to or exceeded the qualifications of the persons hired as Painters.

  4.  I assert that if I were Caucasian, I would have been promoted to the position I sought.

Complaint
SDHR Case No. 10113677
Wilton Jones v. New York University Medical Center

Based on the foregoing, I charge respondent with an unlawful
discriminatory practice relating to employment because of
race/color, in violation of the New York State Human Rights Law
(Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title
VII of the Civil Rights Act of 1964, as amended (covers race,
color, creed, national origin, sex relating to employment).  I
hereby authorize SDHR to accept this verified complaint on
behalf of the U.S. Equal Employment Opportunity Commission
(EEOC) subject to the statutory limitations contained in the
aforementioned law(s).

I have not commenced any other civil action, nor do I have an
action pending before any administrative agency, under any state
or local law, based upon this same unlawful discriminatory
practice.


_____
                    Wilton Jones


STATE OF NEW YORK  )
                   ) SS:
COUNTY OF NEW YORK )

Wilton Jones, being duly sworn, deposes and says: that he/she is
the complainant herein; that he/she has read (or had read to him
or her) the foregoing complaint and knows the content thereof;
that the same is true of his/her own knowledge except as to the
matters therein stated on information and belief; and that as to
those matters, he/she believes the same to be true.


_____
                    Wilton Jones


Subscribed and sworn to                    DAVID E. POWELL
before me this 6th day              COMMISSIONER OF DEEDS
of September, 2006                  CITY OF NEW YORK - No. 1- 6229
                                    CERTIFICATE FILED IN____ N.Y.
                                    _____COUNTY
_____    COMMISSION EXPIRES ;0/23/3007
Signature of Notary Public


Page 2 of 2

# EXHIBIT B

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

WILTON JONES,

                    Complainant,

            v.

NEW YORK UNIVERSITY MEDICAL CENTER,

                    Respondent.

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10117030**

---

Federal Charge No. 16GA702411

    I, Wilton Jones, residing at 7 Post Lane, Staten Island,
NY, 10303, charge the above named respondent, whose address is
Office of Legal Counsel
Attn: Annette B. Johnson, Senior Counsel
3 Park Avenue, 15th floor, New York, NY, 10016 with an unlawful
discriminatory practice relating to employment in violation of
Article 15 of the Executive Law of the State of New York (Human
Rights Law) because of opposed discrimination/retaliation,
race/color.

    Date most recent or continuing discrimination took place is
3/29/2007.

    The allegations are:

1.   SEE ATTACHED.

Based on the foregoing, I charge respondent with an unlawful
discriminatory practice relating to employment because of
opposed discrimination/retaliation, race/color, in violation of
the New York State Human Rights Law (Executive Law, Article 15),
Section 296.

I also charge the above-named respondent with violating Title
VII of the Civil Rights Act of 1964, as amended (covers race,
color, creed, national origin, sex relating to employment).  I
hereby authorize SDHR to accept this verified complaint on
behalf of the U.S. Equal Employment Opportunity Commission
(EEOC) subject to the statutory limitations contained in the
aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

_____
Wilton Jones

STATE OF NEW YORK  )
                   ) SS:
COUNTY OF          )

Wilton Jones, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the  content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_____
Wilton Jones

Subscribed and sworn to
before me this        day
of          , 20

_____
Signature of Notary Public

- 2 -



STATE OF NEW YORK
EXECUTIVE DEPARTMENT
## DIVISION OF HUMAN RIGHTS

### COMPLAINT FORM

Please complete this form completely, sign it before a notary public, have it notarized, and return it to New York State Division of Human Rights central office, One Fordham Plaza, 4th Floor, Bronx, NY 10458. For further information, and/or for assistance in filing a complaint, please refer to our website at www.dhr.state.ny.us, or call your local New York State Division of Human Rights office (see attached list).

### 1. PERSONAL DATA

*WILTON        D        JONES*
First Name            M.I.    Last Name

*7 POST LANE*
Street Address and Apt. No.

*STATEN ISLAND   NY  10303*
City, State, Zip Code

*718-447-2632*            *-718-966-7365*
Primary Telephone Number        Secondary Telephone Number

### 2. JURISDICTION

I wish to file a complaint of discrimination in *(check only ONE)*

__X__Employment   *(The employer being charged must have four or more employees.)*

_____Housing

_____Public Accommodations

_____Credit

_____Educational Institutions

_____Volunteer Firefighters

_____Apprentice Training

_____Boycotting/Blacklisting

The most recent act of discrimination against me occurred on *3-29-2007*.
        Month, Day, Year *(If the discrimination is still going on, use today's date.)*

● Page   1

## 3. BASIS

I believe that I am being discriminated against based on the following factor(s) *(Please check ALL that you believe apply, and be as specific as possible for each factor checked.)*:

_____ Age *(Please Specify Date of Birth_____)*

_____ Arrest Record *(Only if Resolved in your Favor)*

_____ Conviction Record _____

_____ Creed/Religion _____

_____ Disability/Perceived Disability/Past Disability

        *Please Describe One or More Disability* _____

_____ Genetic Pre-Disposition _____

_____ Marital Status ___Unmarried ___Married ___Separated ___Divorced ___Widowed

_____ Military Status _____

_____ National Origin _____

_____ Race _____

_____ Color _____

_____ Sex ____Male ____Female

_____ Sexual Orientation/Perceived Sexual Orientation _____

_X_ Retaliation for Opposing Discrimination

        *Please specify: this involves retaliation for opposing discrimination based on one of the categories listed above, such as by filing a discrimination case, being a witness in a discrimination case, and/or objecting to a discriminatory practice):* Complain # 1011 3677

_____ Violation of a Prior Order issued by the New York State Division of Human Rights.

        *Please Specify Date of Order, if known:* _____

_____ Familial Status (presence of children in the household) *For housing cases only*

## 4. RESPONDENT

*Please provide information below regarding the party that discriminated against you ("Respondent").*

Name of Firm, Organization, or Individual Against Whom you are Filing: *(If you are naming a co-worker, supervisor, agent, etc., please also name the firm or organization.)*

N Y U   MEDICAL

Street Address (Usually a Business Address)
550 FIRST AVENUE

City, State, Zip Code
NEW YORK   N Y   10016

Telephone Number

## 5. DESCRIPTION OF DISCRIMINATION

*Please provide a brief description of the discrimination against you. Please try to be as specific as possible with respect to acts, dates, and names. Please write or print legibly, or attach a typed description.*

ON 9-6-06 I" FILED A" COMPLAIN AGINST
THE RESPONDANT , COMPLAIN # 10113677 , BASED
ON RASE/ COLOR .
ON 3-26-2007 I" WAS FIRED BY DANYEL —
BENSIMONE MY MANAGER . AND ORDERD TO
LEAVE THE WORK SIGHT . I" WAS PAID UP
UNTIL 3-29-07 .
I" BELIVE I" WAS TERMINATED BECAUSE
I" FILED A" COMPLAINT AGAINST THE
RESPONDANT . AND I" AM THERE BY
DAMAGED .

**6. EXECUTION OF COMPLAINT**

**Please read carefully before signing. Please be sure to sign this form in front of a notary public.**

Based on the foregoing, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

> *By filing this complaint you are dual filing your complaint with the EEOC under the Americans With Disabilities Act (covers disability related to employment,) and/or Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment,) and/or .the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment,) or with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing,) as applicable. This will protect your rights under Federal law.*

> *I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Opportunity Commission, subject to the statutory limitations contained in the aforementioned law(s) and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained in the aforementioned law.*

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of this complaint; and that the foregoing is true and correct, based on my current knowledge, information, and belief.

_Sign your Full Legal Name_

Subscribed and Sworn to
Before me this    day
of        ,20    April 3, 2007

_Signature of Notary Public_

**DUANE CORNELLA**
Notary Public, State of New York
Registration #01CO6152355,
Qualified in New York County
Commission Expires Sept. 18, 2010

# EXHIBIT C

**DECISION IN THE MATTER**

**OF**

**New York University Medical Center**
**&**
**LOCAL 810, International Brotherhood of Teamsters**

**NEW YORK STATE EMPLOYMENT RELATIONS**
**BOARD**

**Case No. MP 27069**
**October 9, 2007**

I.  **PROCEDURE**

An arbitration proceeding was convened at 10:00 A.M. on Tuesday, October 9, 2007 by Joseph Gabriele, Arbitrator.

The following were in attendance:

**For the Employer**:
Jay Sharma, Attorney
Mark Parauda, Human Resources Manager
Daniel Bensimon, Area Maintenance Manager
Richard Cohen, V.P., Facilities Management
Ginelle Andrews, Bio Safety Specialist
Sabrina Stines, Environmental Specialist
Craig Gutmann, Bio Medical Technician, Technical Safety Services

**For the Union**:
Michael Lieber, Attorney
Wilton Jones, Grievant
Dennis Figueroa, Area Maintenance Foreman
John Mascali, Business Agent, Local 810, I.B.T.

## II.  **NATURE OF THE COMPLAINT**

The request for arbitration was made to the New York State Employment Relations Board in response to the Employer's action to terminate the employment of Wilton Jones.

## III.  **ISSUE**

The issue, as stipulated by the Employer and the Union is: Has Wilton Jones been discharged for just cause, and if not, what shall be the remedy?.

## IV.  **PERTINENT PARTS OF THE CONTRACT**

### **30. SICK LEAVE**

A.  All full time employees covered by this Agreement, with one or more years of full-time employment, shall be eligible for up to twelve (12) sick days leave per calendar year for a proven illness.

B.  When an employee has completed six (6) months of employment, he or she shall become eligible for paid sick leave as follows: One (1) day for each remaining full month up to December 31st of the current calendar year.

C.  Any unused sick leave may be accrued in a "sick leave bank" up to a maximum of sixty (60) days.

D.  The Employer shall use an employee's accrued sick leave, if any, to pay one-third (1/3) of a day's pay for each day on disability under the New York State Disability Benefit Law to supplement such disability benefits for illness which extends beyond seven (7) consecutive days.  The payment of one third of a day's pay shall be deducted from the employee's accrued sick leave and shall not be payable unless the employee has sick leave available.

### **36. GRIEVANCE PROCEDURE**

In the event that during the term of the Agreement there shall arise any dispute as to the application or interpretation of this Agreement, it shall be settled by resort to the following procedure:

Step 1.  Any grievance shall be submitted in writing within ten (10) working days of its occurrence or the date the grievant knew or reasonably should have known of its occurrence to the appropriate Department Director or his/her representative and

2

an effort will be made to settle the matter by conference.  A shop steward may be present if his/her presence is requested by the grievant.

Step 2.  If the grievance is not settled by the above conference within five (5) working days, the grievant shall immediately request a further conference between an authorized Union officer and a Human Resources representative of the Employer.

If a grievance is initiated by the Union, it shall proceed directly to step 2 of the grievance procedure, except that said grievance must be submitted within the time limits prescribed in Step 1 above.

The Employer may initiate a grievance by written notice thereof to the Union and said grievance shall commence at Step 2 of the grievance procedure.

## 37.  ARBITRATION

In the event that a dispute as defined in Paragraph 36 (Grievance Procedure) is not settled between the parties, then either party may submit the unresolved dispute for final and binding arbitration to an arbitrator selected from panels under the rules of the New York State Employment Relations Board, the arbitration award to be enforceable in any court of competent jurisdiction.  Said submission must be in writing with a copy to the other party and must be made no later than thirty (30) days from the date on which the grievance arises or from the date said grievance was known or reasonably should have been known.

A.  Costs of arbitration will be shared equally by the Employer and the Union although each party shall bear its own legal expenses and those of its witnesses to the proceeding, except as otherwise awarded herein.

B.  Arbitration of disputes under this Agreement shall be the exclusive remedy and shall be available only to the Union and the Employer.

C.  The arbitrator shall have no power to add to, subtract from, or modify, any terms of this Agreement.

## 38.  DISCHARGE

A.  Employees can be discharged and/or disciplined only for just and proper cause.  Before any employee is discharged, the Employer must give three (3) calendar days notice confirmed in writing to the Union, stating the reason for and the date of the proposed discharge, to enable the Union to intercede on behalf of such employee.

B.  The Employer shall not be required to give the above described three (3) days notice in cases of gross insubordination, theft, malicious mischief, drunkenness, or fighting on the premises, but the Employer shall immediately notify the union of the discharge in such cases.

C.  This section is not a modification or waiver of any rights which the union or the discharged employee has under the arbitration provisions of this Agreement.

3

## V. **DOCUMENTARY AND/OR PHYSICAL EVIDENCE**

The parties jointly submitted the following documents as exhibits:

Exhibit Joint #1 – The collective bargaining agreement between NYU HOSPITALS CENTER and LOCAL 810, STEEL, METALS, ALLOYS & HARDWARE FABRICATORS AND WAREHOUSEMEN AFFILIATED WITH INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, 2002 – 2007.

Exhibit Joint #2 – Letter from Daniel Bensimon to Wilton Jones, dated 3/26/07, notifying Mr. Jones of the decision to terminate his employment, effective 3/29/07 for fiscal purposes.

The Employer submitted the following documents as exhibits:

Exhibit Employer #1 – Copy of an e-mail from Richard Cohen to Mark Parauda which contains a prior e-mail between Jean Goldberg and Daniel Bensimon, which relates the incident of 3/15/07 (incorrectly noted as 3/15/06) and requests follow-up "…per medical center policy…".

Exhibit Employer #2 – A written communication, dated 10/3/05, from Daniel Bensimon to Wilton Jones re: Attendance Record 2005 – Verbal Warning, which documents lateness and sick day usage from 1/1/05 to 10/3/05.

Exhibit Employer #3 – A memorandum, dated 3/2/06 from Daniel Bensimon to Wilton Jones re: Verbal Warning: Excessive Absenteeism/Lateness/Leaving Early, which cites absence, lateness and early departure for year 2005.

Exhibit Employer #4 – A written communication, dated 8/7/06 from Daniel Bensimon to Wilton Jones re: Verbal warning – Unacceptable Performance and Unauthorized Absence from the Workplace, which cites that Mr. Jones was observed sleeping during his work shift on 8/4/06.

Exhibit Employer #5 – A written communication, dated 10/12/06 From Daniel Bensimon to Wilton Jones re: Unacceptable Performance – Written Warning, which cites Mr. Jones', "…failure to do (his) assignment."

Exhibit Employer #6 – A submittal which includes two letters from Richard Cohen to Desmond Leung. One, dated 7/26/07, notifies Mr. Leung of his discharge from NYU Medical Center. The other, dated 8/15/07, notifies Mr. Leung that after review of his grievance, his discharge was found to be contractually just and proper.

Exhibit Employer #7 – A copy of an e-mail from Richard Cohen to Mark Parauda which contains two prior e-mails between Jean Goldberg and Richard Cohen that reference Craig Gutmann's comments in regard to what he observed during the incident of 3/15/07.

4

Exhibit Employer #8 – A copy of an e-mail from Jean Goldberg to Richard Cohen which contains a prior e-mail from Ginelle Andrews to Jean Goldberg that summarizes her experience on 3/15/07.

Exhibit Employer #9 – A handwritten communication to whom it may concern from Wilton Jones, dated 3/16/07, which relates the events of 3/15/07.

Exhibit Employer #10 – A handwritten communication to whom it may concern from Dennis Figueroa, dated 3/16/07, which relates the events of 3/15/07.

Exhibit Employer #11 – A letter from Richard Cohen to Wilton Jones, dated 10/27/06 which notifies Mr. Jones that after review of his grievance, the discipline imposed in the form of a written warning was found to be contractually just and proper.

The Union submitted the following document as an Exhibit:

Exhibit Union #1 – A copy of a six page New York State, Division of Human Rights memorandum re: Wilton Jones v. New York University Medical Center, which documents an investigation undertaken in response to a complaint filed by Mr. Jones.

## VI. **POSITIONS OF THE PARTIES**

### A. Position of the Employer

The Employer contends that the Grievant, Wilton Jones, a hospital maintenance/construction worker, was discharged for just cause.  The incident which prompted his termination was a charge of harassment that was lodged against him for an incident that occurred on 3/15/07 and involved sexually suggestive remarks and body language.  His offending behavior was directed to a hospital coworker, present among other hospital employees and an outside contractor, during a meeting arranged to investigate a leak in the hospital plumbing system in a basement room.  While the others were already present in the room, Mr. Jones entered pushing a cart of supplies which included some material, described as cardboard, extending from the cart that brushed Sabrina Stines, a hospital environmental specialist.  When Ms. Stines apologized for possibly being in the way, Mr. Jones made direct eye contact, leered at her, and said words to the effect of, "Don't worry, I know where to do my spanking".  Ms. Stines felt uncomfortable and did not respond to his comment, but Mr. Jones continued to look at her and stare suggestively.  Offended, Ms. Stines reported the incident to her superiors immediately following the meeting.  Once apprised, hospital staff conversed in person, and via hospital e-mail, to respond to the inappropriate behavior, and the response took the form of Mr. Jones' discharge on 3/26/07.

Along with the incident of 3/15/07, the Employer described, during the hearing, a prior incident involving Mr. Jones and Ginelle Andrews, a Bio Safety Specialist and coworker

of Sabrina Stines, which occurred an estimated four or six months prior. On that occasion Ms. Andrews boarded a hospital elevator on which Mr. Jones was already a passenger. Standing in front of him, with her back towards him, she heard Mr. Jones say, "Mmm, this must be my lucky day.". Considering it an inappropriate comment, Ms. Andrews did not respond to it. However, she did not file a report or complaint in regard to the incident.

The Employer maintains that these two incidents are serious workplace transgressions which cannot and should not be tolerated, and needed to be addressed with firm discipline. In characterizing these incidents as sexual harassment during the hearing, it contends that hospital policies and procedures strive to prohibit such offensive behavior before it escalates and manifests itself in turns of groping or other untoward behavior.

Further, the Employer contends that Mr. Jones has been an unsatisfactory worker in other aspects of his job duties and responsibilities. It cites that Mr. Jones had been notified of his workplace deficiencies by the issuance of two verbal warnings to him on10/3/05 and 3/2/06 which noted his 13 absences, 9 instances of lateness and an early departure for the year 2005. In addition a verbal warning and a written warning were issued to him, which noted his unacceptable work performance in that he was found to be sleeping during work hours (8/7/06) and that he failed to attend to his assigned duties (10/12/06). Each of the four notices concluded with the notification to Mr. Jones that a failure to correct the deficiencies, "...will result in further disciplinary action up to and including suspension and/or employment termination.". As a result, after considering Mr. Jones' inappropriate behavior on 3/15/07, and his unsatisfactory work performance, the Employer found cause to discharge him.

Therefore the Employer argues that the discharge should be upheld, and the Union's request for reinstatement and back pay should not be considered.


### B. Position of the Union

The Union contends that the termination of Mr. Jones was an overreaction to the incident of 3/15/07, and constitutes disciplinary action far in excess of what should have been applied. Though the Union agrees that the comments by Mr. Jones were inappropriate, it argues that discharge was absolutely unwarranted. To support this argument it suggests that the women involved were overly sensitive to a word that should not be considered 'dirty', and cites the fact that, thereafter, the female employees continued with their work at the hospital. Although they may have been upset or offended, no tears resulted, so no real harm was done. Additionally, the Union declares that the females involved may have been unaccustomed to the language or banter used by typical maintenance/construction workers, and their reaction caused the severity of the incident to be exaggerated. It further contends that Mr. Jones is being made a scapegoat because others at the hospital have made suggestive comments in the past but were not discharged. In any event, it points to the fact that Mr. Jones admitted to the comments, so more lenient disciplinary action should have been imposed.

In regard to the attendance record of the Grievant, the Union maintains that Mr. Jones was hardly over the limit for absence because the contract allows for 12 days per year, and his incidents of lateness were adequately explained by his need to rely on public transportation to commute daily from Staten Island. The Union argues that if the Employer intended to impose discipline for his attendance, it should have done so prior to the incident of 3/15/07, and should have been no more severe than a suspension from work.

In consideration of these circumstances the Union argues for reinstatement of Mr. Jones with back pay.

## VII.  DISCUSSION AND DISPOSITION

The testimony elicited during the hearing, along with the documentation submitted as evidence, support the occurrence of events as described by the Employer, and there is little dispute to these facts by the Union. The scenario described by the witness is that several hospital workers and the outside contractor were present in the basement room on 3/15/07 when the Grievant entered pushing his supply cart and some protruding material brushed against Sabrina Stines. It was not alleged that this brushing was deliberate, or was anything other than inadvertent, but the Grievant then made the remark in regard to spanking and stared or leered at Ms. Stines. The witnesses concurred on these general facts and the information they provided correlates with, and is documented by, the e-mails submitted into evidence by the Employer. Furthermore, there was little dispute of those facts by the Grievant himself at the hearing.  After being notified of the incident by Sabrina Stines, her superiors undertook an inquiry which resulted in the termination of the Grievant's employment by letter on 3/26/07 (Exhibit J-2). As stated in J-2, this decision was made, "After reviewing the incident and your (the Grievant's) work history...". However, though as stated above the Union acquiesces on the circumstances of the incident, it views the resultant discharge of the Grievant as too harsh a penalty. It disputes the Employer's conclusion that the incident was of the gravity that the Employer contends, in that it was not injurious to the work performance of any staff members. The Union also disputes the Employer's contention that the Grievant's work history, evaluated on its own or in combination with the incident, qualifies for severe disciplinary action. So, inasmuch as the circumstances of the incident are not in dispute, the arbitrator's discussion must focus primarily on whether the incident, on its own, or in tandem with the Grievant's work history, warrants the imposition of disciplinary action at the maximum level of discharge from employment. These issues will be examined and treated separately under the titles 1) Untoward Incidents, 2) Work History and 3) Conclusion.

1) Untoward Incidents

The primary issue involving the incident of 3/15/07 is whether the incident constitutes sexual harassment of a coworker, and if so, the gravity of the sexual harassment. The Employer's contention during the hearing is that the remark to Sabrina Stines was sexual harassment. The e-mail documents submitted into evidence (Exhibits E#1, E#7 and E#8) as well as the testimony given during the hearing indicate a sexual suggestiveness to the remark, as does the remark itself.  However the termination letter

issued on 3/26/07 (Exhibit J#2), makes no mention of sexual harassment but instead cites a charge solely of harassment.  It is therefore first necessary to analyze and identify the substance of the harassment.   No course material utilized by NYU Medical Center for its pre-service or in-service training, on the topic of sexual harassment in the workplace, was submitted into evidence, and as would be expected, the collective bargaining agreement is silent on the topic.  So helpful to this issue would be a definition of sexual harassment utilized by the Federal Equal Employment Opportunity Commission (EEOC) which describes it as:

"...any unwanted and/or repeated verbal or physical advances, sexually explicit derogatory statements, or sexually discriminatory remarks made by someone in the workplace which are offensive or objectionable to the recipient or which cause the recipient discomfort or humiliation or which interferes with the recipient's job performance."

Under analysis the single remark in regard to 'spanking', unwanted and inappropriate though it was, could hardly be described as sexually explicit or discriminatory.  Further, though the remark may well have caused some level of discomfort, reasonably the discomfort should have been momentary or transitory, and likewise should have been any interference with the job performance.  It is well accepted that to constitute sexual harassment, the offensive behavior should be sufficiently severe or pervasive conduct which, in effect, creates or results in a hostile working environment, or interferes with a coworker's performance on a somewhat persistent or chronic basis.  It is difficult to construe that it would have unreasonably interfered with her work performance to that degree.  These two individuals do not share a common workspace or duties and responsibilities, but rather are in two different spheres of the hospital.  Such offensive behavior also might need to contain an element of a quid pro quo.  Though the remark was found objectionable by Ms. Stines, no evidence of a quid pro quo was existent.  It was an inappropriate remark, sexually suggestive, but it was not passed or softly uttered in an office cubicle or in any close or intimate surroundings.  It was said more or less in what could be considered a cavalier, jocular manner, in front of several coworkers, loud enough to be heard and testified to, and the Grievant did not deny that he said it.  So the gravity of this remark, a one-time occurrence, is mitigated by the setting and surroundings, in that it was a group, and by the Grievant's own admission, under oath, that he thought it would be funny.  It is therefore apparent to the arbitrator that the remark, though objectionable, was more a poor attempt at an off-color joke than sexual harassment, and so would not rise to the level of sexual harassment.   However, though not sexual harassment, the remark could hardly constitute even simply harassment.  There was no apparent or implied threat to Ms. Stines, no apparent hostility, no obvious intent to disrupt her work performance, and certainly no evidence of recurring intimidation to make her working conditions unbearable or oppressive.  So the arbitrator does not find that the remark constitutes even simple harassment.  But in spite of the fact that the necessary conditions were lacking, Sabrina Stines was, and was entitled to be, offended at such an untoward remark, made in front of her coworkers.  Her verbal and written report to her superiors was the appropriate reaction for her to take, and her complaint warranted some form of disciplinary action by management in regard to the Wilton Jones.  However, in consideration of the gravity of the incident, management's action could have been a warning or possibly a suspension, but it should not have resulted in the maximum penalty of discharge.

Along with the incident of 3/15/07, testimony was given in regard to an alleged prior encounter which occurred between Ginelle Andrews, a Bio Safety Specialist and coworker of Sabrina Stines, and Wilton Jones on a hospital elevator.   Ms. Andrews stated that an estimated four or six months prior she boarded an elevator on which Mr. Jones was already a passenger.  Standing in front of him, with her back towards him, she heard Mr. Jones say, "Mmm, this must be my lucky day.".   Considering it an inappropriate comment, Ms. Andrews did not respond to it.  However, she also did not file a report or complaint in regard to the incident.  During his testimony Wilton Jones adamantly denied that the incident had occurred.  With no other corroborating information it is therefore left to the arbitrator to decide whether the incident did happen. Inasmuch as the arbitrator believes that Ms. Andrews would have no reason to fabricate this occurrence, the question then arises that, were it to be accepted as an accurate and true event, would it, by itself or combined with the incident of 3/15/07 constitute a pattern of offensive behavior as contended by the Employer?  Because this remark was apparently intended for or directed to Ginelle Andrews in the elevator, and not Sabrina Stines, it would not be a pattern of a type of harassment of the same individual, but it may be a pattern of suggestive remarks to females in general.  However, lacking any other information to corroborate the elevator remark, or to shed light on the intent of the remark, the arbitrator finds that if such a remark was passed, as with the remark of 3/15/07, it would of course be inappropriate, but would not convey the threatening or offensive condition associated with harassment.  So the Employer's contention of a pattern of sexual harassment or simple harassment is difficult to support.  However, had the elevator remark been documented and brought to the attention of hospital staff, as was the incident of 3/15/07, it may have generated disciplinary action, such as a warning, and so may have precluded the incident in the basement.  So, though the arbitrator accepts the testimony as indicative of a pattern of behavior, without corroborating testimony or documentation it carries slight weight.  It would have added weight to the establishment of a pattern had it been documented and addressed through the progressive disciplinary process and, additionally, it may have served to preclude the basement remark.

As stated above, during the hearing the Grievant denied passing the remark in the elevator, but freely admitted to the remark of 3/15/07.  In regard to that incident he testified that he spoke "in general", and did not intend the remark for any one person specifically, and, additionally, the remark was meant to be funny.  He freely admitted that he said spanking, but he said that he did not expect anyone to be upset.  The Grievant went further when he attempted to justify his remark by stating that in some countries the remark would not be considered offensive.  He mentioned Trinidad and seemed to intimate that because of cultural differences, such as in Trinidad, it would not be regarded as offensive.  At this juncture it is imperative to note that the Grievant's defense is totally without merit.  His explanation neither excuses nor defends the remarks, but rather indicates not only a lack of remorse for his conduct, but also a lack of understanding that, in addition to the applicable governmental regulations and conventional mores, there is a formality and decorum necessary to the workplace.

<u>2) Work History</u>

The Employer submitted four exhibits relating to the Grievant's work history (E #2, #3, #4 and #5).  Exhibits #2 and #3 are similar in that they pertain to absences for the year

9

2005. E #2, issued 10/3/05, specifies 8 dates on which the Grievant was late (from 1/19/05 to 9/26/05) and 12 dates on which he was absent for sickness (from 3/1/05 to 9/7/05). Exhibit #3, issued 3/2/06 appears to be an update for 2005 and notes that the Grievant was, "... absent 13 days, late 9 days & left early in the year 2005.". So a comparison of the two memoranda reveals that after being warned of his poor attendance in October '05, the Grievant accumulated one additional lateness and absence for the remainder of the year. No additional memoranda warning the Grievant of attendance deficiencies were submitted as evidence for any dates in 2006 or 2007. This observation indicates that the Grievant, once warned, improved his attendance so as to be within hospital guidelines, which seems to demonstrate that the application of progressive disciplinary was effective.

As stated above, in regard to the attendance record of the Grievant, the Union maintains that Mr. Jones was hardly over the limit for absence because the contract allows for 12 days per year, and his incidents of lateness were adequately explained by his need to rely on public transportation to commute daily from Staten Island. The Union argues that if the Employer intended to impose discipline for his attendance, it should have done so prior to the incident of 3/15/07, and should have been no more severe than a suspension from work. The arbitrator concurs on this issue. The review of Exhibits #2 and #3 leave the arbitrator unconvinced as to their merit in the decision to discharge the Grievant. According to the Employer's testimony the Grievant has been employed for five years and some months. Lacking the ability to calculate the exact timeframe, it would appear that his attendance and tardiness was within acceptable guidelines from 2002 until 2005. After receiving the warnings for poor attendance and tardiness in 2005, he improved to be once again within acceptable guidelines from 2006 until his discharge in March 2007. So the arbitrator finds that the Grievant's attendance and lateness record do not rise to the level of offense which would warrant discharge from employment.

Exhibits #4 and #5 focus on two separate incidents of unsatisfactory work performance. E #4, issued 8/7/06, was a warning which noted that the Grievant was found sleeping when he should have been, "...making rounds and repairs.". E #5, issued 10/12/06, was a warning, stemming from a complaint, which noted that ceiling tiles in the library should have been replaced, but that, "You failed to do your assignment.". It is clear to the arbitrator that of the two, the warning for sleeping denotes an offense more serious in nature, and one for which a harsher penalty than a warning, such as a suspension from work, could have been imposed. There is hardly an excuse for sleeping on the job. So the arbitrator concurs with the Employer on the need to impose harsh disciplinary action for these instances of unsatisfactory performance. However, despite the fact that the Grievant received that warning in regard to sleeping, he nonetheless received nothing more than another warning for his unsatisfactory performance only two months later. Considering the two infractions occurred only two months apart, the Employer would have been wholly within its management prerogative to impose harsh discipline and should have done so. Immediate suspension may have been warranted after the Grievant was found sleeping on 8/7/06, an obvious infraction that need not be a component of work rules – it is common sense, understood. Suspension certainly would have been warranted, when only two months later he was found to have failed in his work assignment after a complaint was lodged by the library department. The time for a second warning had passed. As stated above, each of the four notices (E #2, #3,

#4 and #5), concluded with the notification to Mr. Jones that a failure to correct the deficiencies, "…will result in further disciplinary action up to and including suspension and/or employment termination.". This notification may have motivated the Grievant to correct and improve his attendance, which is the purpose of the progressive disciplinary process. It also may have motivated the Grievant to correct and improve his work performance if the Employer had abided by its written statements which appeared at the bottom of each warning, and graduated to suspension as the next step in the progression. The Employer did not, but yet moved to discharge the Grievant five months later, after the incident of 3/15/07.

<u>3) Conclusion</u>

As stated above the arbitrator has found that for the incident of 3/15/07, management's disciplinary action could have been a warning or possibly a suspension, but it should not have been the maximum penalty of discharge. When coupled with the unsatisfactory work performance denoted by Exhibits E #4 and #5, the arbitrator finds that discharge may have been warranted if a prior suspension had been imposed, but this was not the case. It is difficult for the arbitrator to understand how management considers that a major infraction, such as sleeping on the job, warrants no more than a warning, but the remark passed by the Grievant, though wholly inappropriate as described above, should trigger a discharge. Being unconvinced that the penalty imposed is appropriate, the arbitrator finds that the penalty warranted for the Grievant's untoward behavior of 3/15/07, even when considered in combination with his unsatisfactory work performance, should not be a discharge, but rather, a suspension from work without pay. However, this reduction in penalty hardly renders the Grievant blameless for management's actions. He bears the responsibility of passing at least one remark that was inappropriate and offensive; a remark which he admitted, but yet seemed to defend on a cultural basis. It made one or more of his coworkers feel uncomfortable to the point that it was reported, documented, pursued and addressed by hospital management. And for this the Grievant must bear full responsibility. When considered in conjunction with his unsatisfactory work performance documented by Exhibits E #4 and #5, it is obvious to the arbitrator that a substantial disciplinary action, though one less than discharge, is warranted. So the arbitrator finds that the Grievant should remain on suspension without pay for the remainder of eight full months since the date of his discharge on March 26, 2007, and is to be reinstated to full employment as of November 26, 2007.

Finally, during the hearing the Employer alluded to the hospital's policies and training on the topic of sexual harassment but submitted no material as evidence, nor did the Employer state whether Wilton Jones received the training when, as noted by the Employer, he entered the workplace five years and some months ago. Inasmuch as such policies and training are essential components of the workplace, and each employee is obligated to understand and follow such guidelines, as a precondition to returning to work Wilton Jones must undergo this training, to, hopefully, ensure that his future performance will be in accordance with those policies. Therefore New York University Medical Center must provide such training to Wilton Jones upon his return to work, and must provide it prior to his return to his area of responsibility at the Area Maintenance Shop.

11

## VIII.  FINDINGS AND AWARD

**NOW, THEREFORE,** the Arbitrator finds that the testimony and evidence does support the Union's complaint that the discharge of the Grievant, Wilton Jones, has been without just cause.  However, the Arbitrator also finds that severe disciplinary action is warranted and the Grievant should not return to work unconditionally.  On the basis of these findings the Arbitrator orders that, as the remedy, Wilton Jones shall remain suspended from work without pay for the remainder of eight months, until November 26, 2007.  In addition, he must undergo the training component prescribed by New York University Medical Center to prevent sexual harassment in the workplace, prior to his return to his area of responsibility at the Area Maintenance Shop.

By _____    Date: ___11/5/0?___
Joseph Gabriele, Arbitrator


AFFIRMATION
State of New York, County of New York

The undersigned, under penalty of perjury, affirms that he is the Arbitrator in the within proceeding and signed same in accordance with the Arbitration Law of the State of New York.

_____    Date: ___11/5/0?___
Joseph Gabriele

12

EDWARDS ANGELL PALMER & DODGE LLP
David R. Marshall
Robert J. Brener
Attorneys for New York University and
New York University Hospitals Center
750 Lexington Avenue
New York, New York 10022.6030
212.308.4411

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

DESMOND LEUNG and WILTON JONES,

                Plaintiffs,

        -against-

NEW YORK UNIVERSITY, NEW YORK UNIVERSITY
MEDICAL CENTER, RICHARD COHEN, DANIEL
BENSIMON, JESSICA GARCIA, CAROL STRAPKAY,
GINELLE ANDREWS, SABRINA STINES, and JEAN
GOLDBERG,

                Defendants.
_____

08 CV 5150 (GBD)

**AFFIDAVIT**
**OF SERVICE**

Julia Rabinovich, being duly sworn, deposes and says that she is over the age of eighteen; is not a party to this action; and that on the 5th day of September, 2008, she caused a true and correct copy of the foregoing DECLARATION OF DAVID R. MARSHALL with exhibits annexed thereto to be served upon:

        **Ugo Uzoh, P.C.**
      **Attorneys for Plaintiff**
   **255 Livingston Street, 4th Floor**
        **Brooklyn, NY 11217**

by depositing a true copy of said document enclosed in prepaid, sealed wrapper, properly addressed to the above-named party, in an official depository under the exclusive care and custody of the United States Postal Service, first class mail, within the State of New York.

                        Julia Rabinovich

Sworn to before me this
5th day of September 2008

          Notary Public

      **JEAN W. McLOUGHLIN**
    Notary Public, State of New York
        No. 01MC6184463
      Qualified in Queens County
  Commission Expires April 7, 20__12