Ugochukwu Uzoh (UU-9076)
Ugo Uzoh, P.C.
304 Livingston Street, Suite 2R
Brooklyn, New York 11217
Telephone: (718) 874-6045
Facsimile: (718) 576-2685
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DESMOND LEUNG and WILTON JONES,<br><br>                    Plaintiffs,<br><br>     -against-<br><br>NEW YORK UNIVERSITY, NEW YORK<br>UNIVERSITY MEDICAL CENTER,<br>RICHARD COHEN, DANIEL BENSIMON,<br>JESSICA GARCIA, CAROL STRAPKAY,<br>GINELLE ANDREWS, SABRINA STINES,<br>and JEAN GOLDBERG,<br>                    Defendants. | 08 CV 5150 (GBD) |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT BY DEFAULT AGAINST DEFENDANTS RICHARD COHEN, DANIEL BENSIMON, JESSICA GARCIA, CAROL STRAPKAY, GINELLE ANDREWS, SABRINA STINES, AND JEAN GOLDBERG**

UGO UZOH, P.C.
Ugochukwu Uzoh
Attorney for Plaintiffs
304 Livingston Street, Suite 2R
Brooklyn, NY 11217
(718) 874-6045

Dated: July 1, 2015

*TABLE OF CONTENTS*

*PAGE NO.*

TABLE OF AUTHORITIES………………………………………………………....ii

PRELIMINARY STATEMENT……….....…………………………………………1

STATEMENT OF FACTS…………………………………………………………3

ARGUMENT………………………………………………………………...11

I.      The Court May Enter The
        Individual Defendants'
        Default……………………………………………………………..11

II.     Plaintiffs Are Entitled
        To Judgment By
        Default……………………………………………………………..12

III.    Plaintiffs Adequately
        Stated Viable Causes
        Of Action…………………………………………………………13

        A.  42 U.S.C. §1981 Protects Against
            Discrimination Solely On The
            Basis Of Race…………………………………………........................13

            1.  The Individual Defendants
                Discriminated Against Plaintiffs
                Because Of Their Race And Retaliated
                Against Plaintiffs For Engaging
                In Protected Activity……………………………………………13

IV.     Plaintiffs Are Entitled
        To Recover Damages…………………………………………………...15

V.      The Court Should Stay Further Proceedings
        Pending Determination of The Plaintiffs'
        Pending Motions Including The Instant
        Motion For Default Judgment Against
        The Individual Defendants…………………………………………...16

CONCLUSION………………………………………………………………17

## *TABLE OF AUTHORITIES*

*CASES:*

*Becerril v. E. Bronx NAACP Child Dev. Ctr.*, 2009 U.S. Dist. LEXIS 76376
    (S.D.N.Y. Aug. 18, 2009)……………………………………………………………...15

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998)…………………………………………………………………………15

*Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477
    (S.D.N.Y. 1985)………………………………………………………………………..11

*Cappetta v. Lippman*, 913 F. Supp. 302
    (S.D.N.Y. 1996)………………………………………………………………………..15

*Cesario v. BNI Constr., Inc.*, 2008 U.S. Dist. LEXIS 103155
    (S.D.N.Y. Dec. 15, 2008)…………………………………………………………………12

*Cotton v. Slone*, 4 F.3d 176
    (2d Cir. 1993)…………………………………………………………………………12

*Flaks v. Koegel*, 504 F.2d 702
    (2d Cir. 1974)…………………………………………………………………………15

*Fuller v. Instinet, Inc.*, 120 Fed. Appx. 845
    (2d Cir. 2004)…………………………………………………………………………..14

*Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38
    (2d Cir. 1989)…………………………………………………………………………12

*Georgiu v. Sterling Mounting & Finishing*, 1 Fed. Appx. 47
    (2d Cir. 2001)………………………………………………………………………………1

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155
    (2d Cir. 1992)…………………………………………………………………………..12

*Hirsch v. Innovation Int'l, Inc.*, 1992 U.S. Dist. LEXIS 15882
    (S.D.N.Y. Oct. 15, 1992)…………………………………………………………………12

*Ibok v. Sec. Indus. Automation Corp.*, 369 Fed. Appx. 210
    (2d Cir. 2010)…………………………………………………………………………14

*Kaluczky v. City of White Plains*, 57 F.3d 202
    (2d Cir. 1995)…………………………………………………………………………..14

*Leung v. New York Univ.*, 580 Fed. Appx. 38
   (2d. Cir. 2014)…………………………………………………………………13,17

*Luciano v. Olsten Corp.*, 110 F.3d 210
   (2d Cir. 1997)……………………………………………………………………..14

*Matusick v. Erie County Water Auth.*, 739 F.3d 51
   (2d Cir 2014)…………………………………………………………………...13

*Morrissey v. Sostar, S.A.*, 407 N.Y.S.2d 146
   (1st Dep't 1978)…………………………………………………………………1

*Neirbo Co. v. Bethlehem Corp.*,
   308 U.S. 165 (1939)……………………………………………………………11

*Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54
   (2d Cir. 2002)……………………………………………………………………1

*Ortiz v. City of New York*, 755 F. Supp. 2d 399
   (E.D.N.Y. 2010)………………………………………………………………..15

*Pennsylvania Lumbermens Mut. Ins. Co. v. Forman's of Orchard St., Inc.*,
   1998 U.S. Dist. LEXIS 6836 (S.D.N.Y. May 12, 1998)…………………………12

*Tomka v. Seiler Corp.*, 66 F.3d 1295
   (2d Cir. 1995)…………………………………………………………………..15

*Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007
   (E.D.N.Y. 1992)………………………………………………………………..16

*United States v. Brow*, 2006 U.S. Dist. LEXIS 64361
   (E.D.N.Y. Sept. 1, 2006)………………………………………………………11

*Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36
   (S.D.N.Y. 1993)………………………………………………………………..16

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62
   (2d Cir. 2000)………………………………………………………………13,15

### FEDERAL RULES OF CIVIL PROCEDURE:

Fed. R. Civ. P. 12(h)(1)…………………………………………………………12

iii

## PRELIMINARY STATEMENT

Plaintiffs Desmond Leung and Wilton Jones ("Plaintiffs") are entitled to judgment by default against defendants Richard Cohen**,** Daniel Bensimon**,** Jessica Garcia**,** Carol Strapkay**,** Ginelle Andrews, Sabrina Stines, and Jean Goldberg (collectively "individual defendants") pursuant to Fed. R. Civ. P. 55(b) because of their failure to answer or appear in the instant action even though they were properly served with the Summons and Complaint on June 19, 2008, pursuant to Fed. R. P. 4(e) and N.Y. CPLR § 308(2).[1] (Declaration of Ugochukwu Uzoh ("Uzoh Decl."), Ex. 1 (Affidavits of Process Server Mahitima Baa dated June 19, 2008, respectively, and Amended[2] Affidavits of Process Server Mahitima Baa dated May 20, 2010, respectively).)[3] Accordingly, on May 31, 2015, Plaintiffs submitted an application to the Clerk of the Court for the entry of default against the individual defendants.[4] (Docket No. 80.)

Additionally, Plaintiffs are entitled to back pay and front pay, compensatory damages for hostile work environment, pain and suffering, and for the humiliation, emotional distress and mental anguish inflicted upon Plaintiffs, punitive damages against the individual defendants and attorney's fees for claims under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 et seq. and New York State Human Rights Law ("NYSHRL") and New York City Human Rights

---

[1] On or about June 4, 2008, Plaintiffs commenced the instant action against New York University ("NYU"), New York University Medical Center ("Medical Center") and the individual defendants. Subsequently, on September 5, 2008, NYU and the Medical Center moved to dismiss the Complaint against NYU in its entirety and to dismiss some of the causes of action in the Complaint. NYU and the Medical Center stated in their aforesaid motion that "Counsel for [the Medical Center] and NYU is not authorized to make this motion on behalf of any individual defendant." Notably, the individual defendants, upon information and belief, are employed by NYU and the Medical Center.

[2] *See Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (a process server's affidavit of service constitutes prima facie proof of service, which may be rebutted by a defendant's sworn denial of receipt of service). It is well settled that "once proper service is made, 'any deficiency in the affidavit [does] not take away jurisdiction.'" *Georgiu v. Sterling Mounting & Finishing*, 1 Fed. Appx. 47, 49 (2d Cir. 2001) *quoting Morrissey v. Sostar, S.A.*, 407 N.Y.S.2d 146, 147 (1st Dep't 1978) (supplemental affidavit of process server is acceptable *nunc pro tunc* as supplemental proof of service).

[3] *See* Docket Nos. 3, 29-2.

[4] NYU was dismissed from the instant action by the Court pursuant to the Memorandum and Order dated March 29, 2010 ("Order"). (Docket No. 18.) The individual defendants and the Medical Center are collectively referred to herein as "Defendants".

Law ("NYCHRL"), as well as the costs and disbursements of this action and pre- and post-judgment interest. (Uzoh Decl. Ex. 2 (Complaint).)

Plaintiffs further seek a stay of proceedings in this matter pending determination of the instant motion and the Plaintiffs' motion to reconsider the Order and the Court's April 19, 2011 Order in this matter, (Docket No. 81), as the Court's determination of the said motions would certainly affect the Plaintiffs' litigation strategy.

## STATEMENT OF FACTS

**A.      Mr. Jones' employment and initial termination**

On January 30, 2002, Mr. Jones was employed by Defendants as an Area Maintenance Worker. (Compl. ¶ 20.) Mr. Jones worked in said capacity until May 27, 2008, when his employment was summarily terminated by Defendants. (Compl. ¶ 41.) Mr. Jones was initially terminated by Defendants on March 26, 2007.  (Compl. ¶ 27.)  The decision to terminate Mr. Jones' employment on March 26, 2007, was later reviewed by an arbitrator and found to be baseless and unsupportable. (Compl. ¶ 29.) Accordingly, Mr. Jones was reinstated by Defendants in November 2007, in accordance with the order of the arbitrator dated November 5, 2007. *Id.*

**B.      Mr. Leung's employment and termination**

On September 25, 2002, Mr. Leung was employed by Defendants as an Area Maintenance Worker. (Compl. ¶ 20.) Mr. Leung worked in said capacity until on or about July 26, 2007, when his employment was summarily terminated by Defendants. (Compl. ¶ 33.)

**C.      Plaintiffs were supervised by Bensimon and Cohen**

Plaintiffs, who are black, were supervised by Bensimon and Cohen, who are white. (Compl. ¶¶ 6-7, 9-10.) In addition to other things, Bensimon and Cohen had the power to hire and fire Plaintiffs, assigned duties to Plaintiffs and exercised general supervisory authority over the Plaintiffs including but not limited to promotion, performance reviews and disciplinary actions. (Compl. ¶¶ 9-10, 20-28, 31, 34, 38, 72-75.)

In addition to Plaintiffs, Defendants employed approximately eight other individuals as Area Maintenance Workers. (Compl. ¶ 20.) At the time of their termination, Plaintiffs were the only black Area Maintenance Workers supervised by Bensimon. (Compl. ¶ 20.) Plaintiffs are

close friends. (Compl. ¶ 22.) Mr. Bensimon warned Mr. Leung on numerous occasions concerning his relationship and/or friendship with Mr. Jones. *Id.*

**D.      Initial denial of promotional opportunity**

Mr. Jones is an experienced painter. (Compl. ¶ 21.) At sometime prior to May 12, 2004, Defendants announced an opening for a painter position within the unit supervised by Bensimon and Cohen. *Id.* Given his lengthy painting experience, and because the painter position was an elevated position, Mr. Jones timely applied for the painter position. *Id.*

On May 12, 2004, Mr. Jones learned that Defendants offered the painter position to a less qualified white candidate. *Id.* After learning that Defendants offered the position to a less qualified white candidate, Mr. Jones complaining that he was bypassed because of his race consulted with his then Union, Local 810 International Brotherhood of Teamsters, ("Union") who advised him to file a grievance and/or complaint with the Union. *Id.*

**E.      Initial complaint of racial discrimination**

On May 12, 2004, Mr. Jones filed a grievance and/or complaint with the Union ("2004 Grievance"). *Id.*

**F.      Defendants took retaliatory and other discriminatory actions against Plaintiffs**

Following the 2004 Grievance, Defendants, particularly Bensimon, retaliated against Plaintiffs by harassing them and placing them under intense scrutiny. (Compl. ¶ 22.) Plaintiffs were singled out by Defendants. (Compl. ¶ 23.) On one particular occasion, Bensimon falsely alleged that he caught the Plaintiffs asleep during work. (Compl. ¶ 22.) However, Plaintiffs at the time were on their Union approved morning break and were sitting in a classroom wide awake. (Compl. ¶ 22.)

Prior to May 12, 2004, Plaintiffs' performance ratings and/or job evaluations were always satisfactory. (Compl. ¶ 23.) This changed after May 12, 2004. *Id.* Plaintiffs were frequently written up by Defendants even for the most trivial things, with Defendants placing the negative comments and/or complaints in the Plaintiffs' personnel files. *Id.* In addition, Bensimon and Cohen solicited and/or encouraged Plaintiffs' former coworkers including, but not limited to, Garcia**,** Strapkay**,** Andrews, Stines and Goldberg to file false charges against Plaintiffs. (Compl. ¶ 34.) In 2006, Mr. Leung was assigned by Bensimon to work alone in the Mechanical Room even though the normal practice at the time was to assign approximately 5 employees to work in the Mechanical Room. (Compl. ¶ 24.) Although Mr. Leung was assigned to work alone in the Mechanical Room, Defendants demanded more production from him than from 5 workers. *Id.* On each and every occasion that Plaintiffs complained about Defendants' discriminatory treatment, Defendants intensified their effort to find fault to rely upon in terminating Plaintiffs' employment. (Compl. ¶¶ 20-41, 57-58.)

**G.**   **Mr. Leung was denied a promotional opportunity because of his race and in retaliation for filing a complaint**

On April 12, 2006, Mr. Leung applied for an open position in the Electrical Shop. However, Defendants did not contact Mr. Leung nor interview him for the position. Defendants later offered the open position to a less qualified white candidate. Mr. Leung promptly filed a complaint with his superiors, and threatened to file a complaint for racial discrimination with appropriate authorities.

**H.**     **Mr. Jones was denied yet another promotional opportunity because of his race and in retaliation for filing a complaint**

On May 19, 2006, Mr. Jones submitted his application for another vacant painter position. (Compl. ¶ 25.) Mr. Jones was again bypassed for the promotional opportunity.  *Id.* Defendants offered the painter position to a less qualified white candidate. *Id.*

**I.**     **Mr. Jones filed another complaint for racial discrimination**

On August 9, 2006, following the denial of his application, Mr. Jones filed yet another grievance and/or complaint with the Union ("2006 Grievance"). *Id.* Mr. Jones also filed complaints with the U.S. Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR") alleging discrimination on the basis of his race. *Id.*

**J.**     **Defendants conspired, further retaliated, defamed and took further discriminatory actions against Mr. Jones**

In March 2007, Defendants falsely accused Mr. Jones of sexually harassing Andrews and Stines, and thereafter summarily terminated Mr. Jones' employment on March 26, 2007. (Compl. ¶ 27.) Following his termination, Mr. Jones filed another complaint with the EEOC and NYSDHR. *Id.*

The sexual harassment charges against Mr. Jones stem from a purported incident which allegedly occurred on March 15, 2007. (Compl. ¶ 28.) Specifically, Andrews, and the Defendants, falsely alleged that on March 15, 2007, Mr. Jones made eye contact with both Andrews and Stines and said to them "I knew one day you'll come to me." *Id.* Ms. Andrews further alleged that Mr. Jones then proceeded to state to Stines "no no. . . it's okay. . . I'm not going to hurt you honey. . . I know exactly where to do my spanking." *Id.* Ms. Andrews stated that the above remarks were "accompanied by an inappropriate stare towards [Stines'] derriere."

6

(Compl. ¶ 28.) Ms. Andrews further stated that Mr. Jones "persisted to make constant eye contact with [Stines]." *Id.* Ms. Stines also filed charges against Mr. Jones including similar false allegations. *Id.* In addition to Andrews and Stines, Goldberg accused Mr. Jones of sexual harassment, and falsely alleged that Mr. Jones "made comments (e.g., about spanking) and used body language that was offensive and demeaning to [Stines]." *Id.* Ms. Goldberg further alleged that Mr. Jones made "sexual comments . . . and [displayed] inappropriate sexual body language." *Id.*

Subsequently, Cohen conducted an investigation into the allegations by Stines, Andrews and Goldberg. (Compl. ¶ 31.) Several other individuals who witnessed and/or were present at the scene of the alleged incident denied hearing any of the statements complained of by Stines, Andrews and Goldberg, and denied observing Mr. Jones engage in any offensive or inappropriate conduct. *Id.* Despite the above, Cohen, and the Defendants, still concluded that Mr. Jones sexually harassed Stines, and subsequently published the false allegations to several other individuals knowing fully well that the allegations were false. *Id.* The arbitrator, as noted above, later determined that these allegations were baseless and unsupportable. (Compl. ¶ 29.)

## K.  Defendants conspired, further retaliated, defamed and took further discriminatory actions against Mr. Leung

Following Mr. Jones' initial termination in March 2007, Defendants targeted Mr. Leung. In July 2007, Defendants falsely accused Mr. Leung of sexually harassing Garcia and Strapkay, and thereafter summarily terminated Mr. Leung's employment on July 26, 2007. (Compl. ¶ 33.) The sexual harassment charges against Mr. Leung stem from false allegations made by Garcia and Strapkay, which were published to several other individuals. (Compl. ¶ 34.) As in Mr. Jones' case, Bensimon conspired with Garcia and Strapkay, and later instructed said individuals to bring the false charges against Mr. Leung. (Compl. ¶ 34.)

Specifically, Garcia falsely alleged that on May 18, 2007, Mr. Leung ran amuck and was singing loudly "I want pussy, give me pussy" and "I want the pussy give me the pussy!" in the hallway, in front of the carpenter's shop, and inside the stockroom where she and Strapkay were located, and in her presence and in the presence and to the hearing of everyone present including Strapkay and two or more other individuals. (Compl. ¶ 35.) Ms. Garcia further alleged that Mr. Leung had called her on numerous occasions at "#5275" asking her to "Repeat my calls in Spanish cause it sounds sexy", and that Mr. Leung had called her on one occasion "around 3:20 making orgasmic noises." (Compl. ¶ 35.)

Ms. Strapkay on her part falsely alleged that she was at her desk on May 18, 2007, answering the phones which, according to her, were extremely busy on that day when Mr. Leung stood next to her while she was still answering the phones but "could hear him singing the word 'Pussy' over and over again." (Compl. ¶ 36.) As in Mr. Jones' case, Cohen later conducted an investigation into the allegations by Garcia and Strapkay. (Compl. ¶ 38.) Again, as in Mr. Jones' case, several other individuals who witnessed and/or were present at the scene of the alleged incident denied hearing any of the statements complained of by Garcia and Strapkay, and denied observing Mr. Leung engage in any offensive or inappropriate conduct. (Compl. ¶ 38.) Despite the above, Cohen, and the Defendants, still concluded that Mr. Leung sexually harassed Garcia, and subsequently published the false allegations to several other individuals knowing fully well that the allegations were false. *Id.*

## L.   Defendants did not terminate Plaintiffs' white co-worker when sexual harassment charges were levied against him

Prior to the termination of Plaintiffs' employment, sexual harassment charges were levied against Plaintiffs' white co-worker. (Compl. ¶¶ 32, 39.) Defendants merely reassigned said employee to another unit and did not terminate his employment. *Id.*

**M.      Defendants further retaliated, defamed and took further discriminatory actions against Mr. Leung**

On or about August 6, 2007, following Mr. Leung's termination, Defendants falsely accused Mr. Leung of burglarizing their premises. Defendants further falsely alleged that Mr. Leung stole certain items which were allegedly provided to him by Defendants including, but not limited to, a cordless drill. However, Mr. Leung promptly returned all items provided to him by Defendants and was issued a receipt by Defendants acknowledging that he did return the very items which he was falsely accused of stealing. Mr. Cohen later directed Olga Yakubova to place the false allegations and defamatory statements in Mr. Leung's employee/personnel file. Mr. Cohen and the Defendants however failed to place in Mr. Leung's employee/personnel file any of the receipts issued by Defendants to Mr. Leung acknowledging that he promptly returned the items which he was falsely accused of stealing.

**N.      Following Mr. Jones' reinstatement by the arbitrator, Defendants intensified their effort and made it clear to Mr. Jones that he was not wanted**

Pursuant to the order of the arbitrator, reinstating Mr. Jones after his initial termination, Mr. Jones returned to work in or about November 2007. Following his return, Bensimon and Defendants began to assign at least one of Mr. Jones' co-workers to monitor him on a regular basis. Mr. Jones, following his return, was subjected to physical abuse by Defendants. On numerous occasions following his return, Mr. Jones' co-workers intentionally blinded him with their flash lights. In addition to other things, Mr. Jones' co-workers taunted, mocked and ceaselessly derided him for returning back to work.

On February 29, 2008, Bensimon issued yet another written warning to Mr. Jones threatening to suspend or terminate his employment for using his earned sick time to recover from a surgery necessitated by a work-related injury. Defendants then proceeded to withhold Mr.

Jones' annual salary increase for 2008. When Mr. Jones inquired about his annual raise, Defendants withheld his salary. On top of that, Defendants proceeded to direct Mr. Jones to refund to them within 20 days a total of $2,836.04 which, according to Defendants, were overpayments allegedly made to him between May 18, 2008 to May 23, 2008.

On May 27, 2008, Mr. Jones was forced to resign because of the hostile work environment created by Defendants, and was therefore discharged and/or constructively terminated by Defendants on said date. (Compl. ¶¶ 40-41.)

## ARGUMENT

I.   **The Court May Enter The
     Individual Defendants'
     Default**

Although applications for an entry of default are typically addressed to the Clerk of Court, "[t]he fact that Rule 55(a) gives the clerk authority to enter a default is not a limitation on the power of the court to do so." *United States v. Brow*, 2006 U.S. Dist. LEXIS 64361, at *5 (E.D.N.Y. Sept. 1, 2006). It is indeed well established that "'[s]ince the court has the authority to enter a judgment by default, it impliedly has the power to . . . enter[] default' as well." *Id.*

As noted above, Plaintiffs duly perfected service upon the individual defendants who have failed to answer or otherwise appear in the instant action. Because of the individual defendants' default, Plaintiffs on May 31, 2015, duly submitted an application to the Clerk of Court for the entry of default against the individual defendants. (Docket No. 80.) In addition to other things, Plaintiffs submitted an affidavit, pursuant to U.S. Dist. Ct. R. S. & E.D.N.Y. Local Civ. R. 55.1, showing that none of the individual defendants is an infant or incompetent or is presently in the military service of the United States, and that the individual defendants have failed to plead or otherwise defend the action and that the Summons and Complaint were properly served upon the individual defendants.[5] *Id.* It does however appear from a review of the Docket Sheet that the Clerk of the Court has yet to enter the individual defendants' default.

---

[5] Assuming for the sake of argument that the Summons and Complaint were not served upon the individual defendants -- the record however clearly shows that the Summons and Complaint were properly served upon them -- the individual defendants and their employer, NYU and the Medical Center, were required to raise any such lack of service as an affirmative defense and promptly make a motion to dismiss the individual defendants for lack of service. *See Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985) (defendants may not preserve the defense of insufficiency of service of process in perpetuity, and are required at some point to raise the issue by motion for the court's determination). By failing to raise any such defense and failing to move to dismiss for lack of service, the individual defendants waived any lack of personal jurisdiction defense. *See id* at 480 *quoting Neirbo Co. v. Bethlehem Corp.*, 308 U.S. 165, 168 (1939) (lack of personal jurisdiction is a privileged defense that can be waived "by failure [to] assert [it] seasonably, by formal submission in a cause, or by submission through conduct."). Pursuant to Fed. R. Civ. P. 12(h), "[a] defense of lack of jurisdiction over the person . . . or insufficiency of service

Accordingly, as this Court has the power to enter the default and as entry of default is a prerequisite to the Court's consideration of a motion for a default judgment, the Court may enter the individual defendants' default. *See Hirsch v. Innovation Int'l, Inc.*, 1992 U.S. Dist. LEXIS 15882, at \*2-\*3 (S.D.N.Y. Oct. 15, 1992).

## II. Plaintiffs Are Entitled To Judgment By Default

Plaintiffs are entitled to judgment by default under Fed. R. Civ. P. 55(b) because the individual defendants have failed to appear in this action or answer the pleadings. Where a party is in default the Court should accept the Plaintiffs' allegations of fact, except those relating to damages, as true. *See Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993) ("factual allegations are taken as true in light of the general default judgment"); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993); *Cesario v. BNI Constr., Inc.*, 2008 U.S. Dist. LEXIS 103155, at \*3 (S.D.N.Y. Dec. 15, 2008). The Court may conduct an inquest to calculate damages so long as the Court ensures that there is a basis for the damages specified in the default judgment. *See Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *Cesario*, 2008 U.S. Dist. LEXIS 103155, at \*3.

---

of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." *Pennsylvania Lumbermens Mut. Ins. Co. v. Forman's of Orchard St., Inc.*, 1998 U.S. Dist. LEXIS 6836, at \*5 (S.D.N.Y. May 12, 1998) *quoting* Rule 12(h)(1).

III.   **Plaintiffs Adequately**
       **Stated Viable Causes**
       **Of Action**

A.     **42 U.S.C. §1981 Protects Against**
       **Discrimination Solely On The**
       **Basis Of Race**

"Congress 'intended § 1981 to apply to employment discrimination' and Section 1981

'provid[es] a vehicle for every employee to remedy racial discrimination in the workplace[]' * *

* [and] [P]laintiffs' failure to point to a specific written contract outside of their employment

relationship is not fatal to their claim." *Leung v. New York Univ.*, 580 Fed. Appx. 38, 39-40 (2d.

Cir. 2014). "In addition, '42 U.S.C. § 1981 encompasses claims of retaliation.'" *Id.* at 40.

Moreover, § 1981 provides for individual liability on the part of non-employers. *See Whidbee v.*

*Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74-75 (2d Cir. 2000).

Accordingly, the Second Circuit remanded Plaintiffs' claims and directed the Court to

"consider the liability of the individual defendants for these Section 1981 claims".[6] *Leung*, 580

Fed. Appx. at 40.

1.     **The Individual Defendants**
       **Discriminated Against Plaintiffs**
       **Because Of Their Race And Retaliated**
       **Against Plaintiffs For Engaging**
       **In Protected Activity**

Plaintiffs adequately demonstrated the involvement and/or participation of the individual

defendants in the discriminatory conduct that caused the instant action. Plaintiffs allege that

Cohen made the decision to terminate their employment. (Compl. ¶¶ 72-75.) *See Matusick v.*

*Erie County Water Auth.*, 739 F.3d 51, 73 (2d Cir 2014) (individuals who participated in the

---

[6] Notably, the Court had dismissed the individual defendants from the instant action on the grounds that the "plaintiffs have not alleged a basis upon which those individual defendants can be held liable under Title VII, § 296 of the New York State Executive Law or § 8-107.1(a) the HR Code." *See* Order at 11. In their motion filed earlier today seeking a reconsideration of the Order and the Court's April 19, 2011 Order in this matter, (Docket No. 81), Plaintiffs maintain that they stated viable claims against the individual defendants under NYSHRL and NYCHRL.

investigation and termination aided and abetted the improper dismissal). In addition, Plaintiffs allege that Bensimon assigned Leung to work alone in the mechanical room contrary to the normal practice, placed the Plaintiffs under intense monitoring and falsely accused Plaintiffs of sleeping on the job. (Compl. ¶¶ 22-24.) *See Fuller v. Instinet, Inc.*, 120 Fed. Appx. 845, 847 (2d Cir. 2004) (monitoring may constitute adverse actions); *Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) (evidence that plaintiff was intentionally given an impossible workload without the commensurate support staff constitutes adverse employment action). Cohen and Bensimon also wrote complaints against the Plaintiffs and reprimanded the Plaintiffs even for the most trivial things, with Cohen, Bensimon and the Defendants placing the negative comments and/or complaints in the Plaintiffs' personnel files. (Compl. ¶ 23.) *See Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995) ("Adverse employment actions include discharge, demotion, refusal to hire, refusal to promote, and reprimand"). Plaintiffs also received poor performance ratings and/or job evaluations from Cohen and Bensimon. *See Fuller*, 120 Fed. Appx. at 847 (poor performance reviews may constitute adverse actions). Cohen and Bensimon further solicited and/or encouraged Plaintiffs' former coworkers including, but not limited to, Garcia**,** Strapkay**,** Andrews, Stines and Goldberg to file false charges against Plaintiffs.[7] (Compl. ¶ 34.)

---

[7] Plaintiffs also allege that Cohen and Bensimon retaliated against them by, among other things, giving them poor performance ratings, requesting plaintiffs' former co-workers to file false charges against them, leveling false accusations against plaintiffs, including false accusations of sexual misconduct and sleeping on the job, placing false and unsubstantiated charges in plaintiffs' personnel files, warning to terminate the plaintiffs' respective employments and terminating the plaintiffs' respective employments on the basis of false charges levied against them, placing plaintiffs under intense monitoring and supervision, and assigning Mr. Leung to work alone in the Mechanical Room even though the normal practice at the time was to assign approximately 5 employees to work in the Mechanical Room. (Compl. ¶¶ 20-41.) *See Ibok v. Sec. Indus. Automation Corp.*, 369 Fed. Appx. 210, 214 (2d Cir. 2010) (summary order) (plaintiff suffered retaliatory adverse actions in the form of warnings, a negative performance review, the elimination of his shift and, ultimately, his firing). Here, as in *Ibok*, plaintiffs suffered adverse actions in the form of warnings, intense surveillance and pervasive monitoring, negative performance reviews, unreasonable level of scrutiny, excessive hostility, unmerited disciplinary charges, assignment to the isolated mechanical room, physical and verbal abuse and, ultimately, firing. (Compl. ¶¶ 20-41, 57-58, 63-64, 69-70.) *See Ibok*, 369 Fed. Appx. at 214.

Plaintiffs further allege that Garcia, Strapkay, Andrews, Stines and Goldberg played a role, participated in, set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified and/or conspired together in bringing about Plaintiffs' wrongful termination, and/or worked in concert with Cohen and Bensimon, and with other individuals, in effecting the alleged wrongful conduct. (Compl. ¶¶ 28-31, 34-38, 78-79.) *See Ortiz v. City of New York*, 755 F. Supp. 2d 399, 408 n.4 (E.D.N.Y. 2010) ("The Second Circuit has held that as long as there is some link to connect the actor with the discriminatory action, § 1981 provides for personal liability.") *citing Whidbee*, 223 F.3d at 75-76. *See also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) (plaintiffs may pursue actions against individual defendants for aiding and abetting discrimination pursuant to N.Y. Exec. Law §296(6) regardless of control, as long as such defendant participated in the conduct giving rise to the discrimination claim).

## IV.     Plaintiffs Are Entitled To Recover Damages

By defaulting, the individual defendants concede liability. *See Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). Where, as here, the damages sought and/or set forth in the complaint are not liquidated or computable and there is no basis to award damages, the Court may schedule an inquest hearing to enable the Plaintiffs establish their damages by submitting proof. *See Cappetta v. Lippman*, 913 F. Supp. 302, 304 (S.D.N.Y. 1996). Importantly, a prevailing plaintiff in a discrimination suit is entitled to, among other things, award of back pay, front pay, pre- and post-judgment interest, compensatory and punitive damages and attorney's fees and costs. *See Becerril v. E. Bronx NAACP Child Dev. Ctr.*, 2009 U.S. Dist. LEXIS 76376 (S.D.N.Y. Aug. 18, 2009).

**V.    The Court Should Stay Further Proceedings**
       **Pending Determination of The Plaintiffs'**
       **Pending Motions Including The Instant**
       **Motion For Default Judgment Against**
       **The Individual Defendants**

"It is well settled that district courts have the inherent power, in the exercise of discretion, to issue a stay when the interests of justice require such action." *Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). "Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders." *Id.* In determining whether to stay proceedings, courts "balance: (1) the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest." *Twenty First Century Corp. v. LaBianca*, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992).

As noted above, the Court previously dismissed the individual defendants from the instant action which dismissal prompted the Plaintiffs to file an interlocutory appeal. Plaintiffs in filing the interlocutory appeal clearly expressed their willingness to forfeit their claims against the Medical Center should they lose the appeal. Notably, Plaintiffs could have elected to engage in discovery with the Medical Center *only*, defend the Medical Center's motion for summary judgment, proceed to jury trial against the Medical Center *only*, appeal the dismissal of the individual defendants after the jury trial, and then do it all over again. However, because of several issues including, but not limited to the fact that it is inefficient to prosecute the instant action and all related proceedings twice, Plaintiffs decided to seek an interlocutory appeal knowing fully well that they would forfeit their claims against the Medical Center should they

lose the appeal. Having taken the risk and prevailed on the appeal, Plaintiffs should not be forced

to engage in discovery against the Medical Center *only*, and/or engage in any other proceedings

against the Medical Center *only*, particularly as the liability and/or status of the individual

defendants remain unresolved. Plaintiffs would undoubtedly be prejudiced given the history of

this case and particularly the effort and resources spent in taking an appeal and convincing the

Second Circuit -- in the face of an all out effort by NYU and the Medical Center to dismiss the

appeal and dismiss the entire case -- to direct this Court on remand to "consider the liability of

the individual defendants for these Section 1981 claims". *Leung*, 580 Fed. Appx. at 40.

Accordingly, Plaintiffs seek a stay pending determination of their motions which remain

*sub judice* including their instant motion for default judgment and their motion to reconsider the

Order and the Court's April 19, 2011 Order in this matter, (Docket No. 81). Having an idea as to

which claims and parties would remain in this matter would certainly influence or guide the

Plaintiffs' litigation strategy. Moreover, the Medical Center cannot be burdened by any stay in

proceedings.

## CONCLUSION

For all the reasons set forth above, Plaintiffs' motion should be granted in its entirety.

Dated: Brooklyn, New York
     July 1, 2015

                          Respectfully submitted,


                          _____ /s/Ugochukwu Uzoh
                          Ugochukwu Uzoh
                          Attorney for Plaintiffs
                          304 Livingston Street, Suite 2R
                          Brooklyn, NY 11217
                          (718) 874-6045
                          (718) 576-2685
                          u.ugochukwu@yahoo.com