UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DESMOND LEUNG, WILTON JONES,                              :

                  Plaintiffs,                          :

            -against-                               :

                              :

NEW YORK UNIVERSITY, NEW YORK:
UNIVERSITY MEDICAL CENTER, NYU:
HOSPITALS CENTER, RICHARD COHEN,:
DANIEL BENSIMON, JESSICA GARCIA,:
CAROL STRAPKAY, GINELLE ANDREWS,:
SABRINA STINES, AND JEAN GOLDBERG,   :

                  Defendants.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM AND ORDER

08-cv-05150 (GBD)

GEORGE B. DANIELS, United States District Judge:

On June 4, 2008, Plaintiffs Desmond Leung and Wilton Jones filed a complaint against

their former employer, NYU Hospitals Center ("NYUHC"), New York University Medical Center,

of which the NYUHC is a part, as well as the academic institution with which both are affiliated,

New York University ("NYU," together with NYUHC, "Defendants"). The complaint also named

several NYUHC employees who served as Plaintiffs' managers or coworkers as defendants

("Individual Defendants").[1]  (Complaint, (ECF No. 1).)  Specifically, the Plaintiffs alleged (1)

racial discrimination under 42 U.S.C. § 1981; (2) discriminatory failure to promote, wrongful

discharge, retaliation, and creation of a hostile work environment, in violation of (a) 42 U.S.C. §

2000e *et seq.* ("Title VII"), (b) New York State Executive Law § 296 ("NYSHRL"), and (c) the

Administrative Code of the City of New York, § 8-107.1(a) *et seq.* ("NYCHRL"); (3) violation of

---

[1] The Individual Defendants are: Richard Cohen, Daniel Bensimon, Jessica Garcia, Carol Strapkay, Ginelle
Andrews, Sabrina Stines, and Jean Goldberg.

rights under 42 U.S.C. § 1985; and (4) common-law claims for tortuous interference with contract, defamation and intentional infliction of emotional distress. (Complaint, (ECF No. 1).)

Now pending before the Court are Plaintiffs' motion for default judgment against the Individual Defendants, (Motion for Default Judgment, (ECF Nos. 83-85)), and the Individual Defendants' cross-motion to dismiss the Plaintiffs' claims against the Individual Defendants for insufficiency of service, (Cross-Motion to Dismiss the Individual Defendants, (ECF Nos. 106-115)). Both parties' motions are denied.

## I.  Background

Defendant NYUHC is an acute care hospital with facilities located around the City of New York that has its principal campus on a ten-acre plot that stretches four city blocks along both sides of First Avenue in Manhattan between East 30th and 34th Streets (the "First Avenue Campus"). (Declaration of Richard Cohen ("Cohen Decl."), (ECF No. 108), at ¶ 2.) The First Avenue Campus is comprised of 13 buildings that house both employees that work for NYUHC and employees who work for the NYU School of Medicine ("School"), which together are referred to as the NYU Medical Center ("NYUMC").[2] (*Id.*) One of the 13 buildings is Greenberg Hall, which is located at 545 First Avenue, New York, New York 10016. (*Id.*) Greenberg Hall houses the Facilities Management Department as well as the Environmental Services Division. (*Id.*) Another of the 13 buildings is the Medical Science Building, which is located at 550 First Avenue, New York, New York 10016, across the street from Greenberg Hall. (*Id.*) The Medical Science Building houses, among other things, laboratories and various executive offices, including the Office of the General Counsel of the Medical Center. (*Id.*)

---

[2] The Medical Center's official name is the NYU Langone Medical Center. (*Id.*)

While employed, Plaintiffs worked for NYUHC as Area Maintenance workers as part of the Facilities Management Department. (Complaint at ¶¶ 6-10.) All of the Individual Defendants were also employed by NYUHC, (Memorandum of Law in Further Support of Defendants' Cross-Motion to Dismiss the Individual Defendants, (ECF No. 131), at 6), and were assigned to work in either the Facilities Management Department or the Environmental Services Division, both of which were located in Greenberg Hall, (Cohen Decl. at ¶ 3; Declaration of Daniel Bensimon ("Bensimon Decl."), (ECF No. 98), at ¶ 2; Declaration of Isabel Goldberg ("Goldberg Decl."), (ECF No. 99), at ¶ 2; Declaration of Sabrina Stines ("Stines Decl."), (ECF No. 100), at ¶ 2; Declaration of Carol Stropkay ("Stropkay Decl."), (ECF No. 101), at ¶ 2; Declaration of Ginelle Andrews ("Andrews Decl."), (ECF No. 102), at ¶ 2; Declaration of Jessica Garcia ("Garcia Decl."), (ECF No. 103), at ¶ 2.)

On June 4, 2008, Plaintiffs filed the Complaint at the heart of this action. (ECF No. 1.) The Clerk of Court issued the Summons on June 5, 2008. (ECF No. 2.) On June 19, 2008, Plaintiffs' process server delivered nine copies of the Summons and Complaint to the General Counsel's Office located in the Medical Science Building at 550 First Avenue. (Declaration of Jennifer Kitsonidis ("Kitsonidis Decl."), (ECF No. 104), at ¶ 4.) Jennifer Kitsonidis (née Faria), the executive assistant to the Hospital's General Counsel, received the nine copies and accepted service of the Summons and Complaint on behalf of NYUHC and NYU. (*Id.* at ¶¶ 1-2, 4.)

On July 9, 2008, Plaintiffs filed nine affidavits of service, including one for NYUHC, one for NYU, and one for each of the Individual Defendants. (Affidavit of Service, (ECF No. 3).) The affidavits of service for each Individual Defendant state:

> On **6/19/08** at **12:17 PM** at **550 1st Ave, New York, NY 10016** Deponent served a true copy of the **SUMMONS** and **COMPLAINT** on [**Individual Defendant**] by delivering a true copy of each to **JENNIFER FARIA** a [sic] authorized person.

3

> Said premises are recipient's actual place of work within the state.
> I asked the person spoken to whether the respondent actually works
> at these premises and received an affirmative response.

(Affidavit of Service, (ECF No. 3).)

In a sworn affidavit, Katsonidis states that no process server ever asked her whether a particular individual employee worked at the Hospital, and that she could not have provided the process server with such information because she did not know any of the Individual Defendants. (*Id.* at ¶ 5.)

Additionally, all of the Individual Defendants aver that they never received a copy of the Summons and Complaint at work or at home, by personal delivery or by mail.  (Cohen Decl. at ¶ 4; Bensimon Decl. at ¶ 3; Goldberg Decl. at ¶ 3; Stines Decl. at ¶ 3; Stropkay Decl. at ¶ 3; Andrews Decl. at ¶ 3; Garcia Decl. at ¶ 3.)   The Individual Defendants all maintain that they had no knowledge of being named as defendants in this action until June 2015 when Plaintiffs filed a request to have a default judgment entered against them.  (Cohen Decl. at ¶ 6; Bensimon Decl. at ¶ 5; Goldberg Decl. at ¶ 5; Stines Decl. at ¶ 5; Stropkay Decl. at ¶ 5; Andrews Decl. at ¶ 5; Garcia Decl. at ¶ 5; *see* Request to Enter Default, (ECF No. 80) (filed on May 31, 2015).)

NYU and NYUHC appeared in this action by counsel.[3]  On September 5, 2008, NYU and NYUHC filed a joint motion to dismiss.  A footnote in the accompanying Memorandum of Law stated:

> The individuals named in the Complaint's caption as co-defendants
> have not, to the best of NYUHC's knowledge, been served with the
> Complaint by Plaintiffs and are thus not subject to this Court's
> jurisdiction.  Counsel for NYUHC and NYU is not authorized to
> make this motion on behalf of any individual defendant.

---

[3] Counsel for NYU and NYUHC never formally filed a notice of appearance.  Counsel first appeared on July 18, 2008 by filing a joint stipulation to extend the time for NYU and NYUHC to respond to the Complaint. (Stipulation, (ECF No. 4).)

(Memorandum of Law in Support of Defendant New York University's and New York University Medical Center's Motion for Partial Dismissal of the Complaint, (ECF No. 8), at 2 n.3.)

By Memorandum and Order filed March 20, 2010 ("March 2010 Order"), this Court granted NYU and NYUHC's joint motion to dismiss in part by dismissing all claims against NYU, the section 1981 and 1985 claims, the hostile-work-environment claims, and the common-law claims for tortuous interference, defamation, and intentional infliction of emotional distress. (Memorandum and Order ("March 2010 Order"), (ECF No. 18), at 19.)  This Court also *sua sponte* dismissed all claims against the Individual Defendants.  (*Id.*)  This Court denied the motion to dismiss Plaintiffs' claims against NYUHC for discriminatory failure to promote, wrongful discharge, and retaliation under Title VII, the NYSHRL, and the NYCHRL.  (*Id.*)

On April 12, 2010, Plaintiffs filed a Motion to Reconsider and Amend the March 2010 Order, requesting, *inter alia*, to reinstate the claims against the Individual Defendants. (Memorandum of Law in Support of Plaintiffs' Motion to Reconsider and Amend the March 29, 2010 Memorandum and Order, (ECF Nos. 22), at 9-12.)  Defendants NYU and NYUHC opposed the Plaintiffs' motion.[4]  (Defendant New York University Hospitals Center's Memorandum in Opposition to Plaintiffs' Motion to Reconsider and Amend the Order, (ECF No. 26).)

On May 22, 2010, Plaintiffs filed amended affidavits of service, which added the following paragraph:

---

[4] Individual Defendants' counsel argued extensively in this motion that the claims against them which were previously dismissed should not be reinstated.  (Defendant New York University Hospital Center's Opposition to Plaintiffs' Motion to Reopen the April 19, 2011 Order, (ECF No. 26), at 8-12.)  The brief argued both that service of process on the Individual Defendants was insufficient because the process server's affidavit did not state that a mailing had occurred as required by CPLR 308(2), and that there was no substantive basis to reinstate the claims against the Individual Defendants.  (*Id.*)  Although counsel had not yet filed a notice of appearance on the Individual Defendants behalf, "[a] party makes a 'constructive appearance' in an action when the contacts between the parties clearly evidence an intent to defend."  6 C.J.S. Appearances § 18.  Although Defendants' counsel stated in a footnote in its initial motion to dismiss filed in 2008 that it did not have authority to file a motion on behalf of the Individual Defendants, no such declaration accompanied the extensive written argument in counsel's opposition brief.

> Deponent sent a copy on **6/21/2008** by Certificate [sic] of mailing and an additional second copy by regular first class mail to the recipient's last known place of work in an official depository under the exclusive care and custody of the U.S. Postal Services. The envelope bore the legend "Personal and confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney of [sic] concerned action against the recipient [sic].

(Amended Affidavit of Service, (ECF No. 31-2), at 2.)

This Court denied Plaintiffs' motion for reconsideration on October 8, 2010. (Order ("October 2010 Order"), (ECF No. 34), at 1.)

In April 2011, Plaintiffs voluntarily dismissed their Title VII, NYSHRL and NYCHRL claims in order to immediately appeal the dismissal of their other claims. (*See* Memorandum and Order, (ECF No. 135), at 3-4.) The Court of Appeals vacated the March 2010 Order in part, and remanded for reconsideration (1) Plaintiffs' § 1981 claim against NYUHC and the Individual Defendants; and (2) Plaintiffs' hostile work environment claim against NYUHC under the NYCHRL. *Leung v. New York Univ.*, No. 13-2267-cv, 580 Fed App'x 38, 39-40 (2d Cir. Oct. 14, 2014) (summary order).

On May 31, 2015, Plaintiffs requested the Clerk of Court's entry of default against the Individual Defendants. On July 1, 2015, Plaintiffs moved this Court for default judgment against the Individual Defendants. (Plaintiffs' Memorandum of Law in Support of Their Motion for Judgment By Default Against Defendants Richard Cohen, Daniel Bensimon, Jessica Garcia, Carol Strapkay, Ginelle Andrews, Sabrina Stines, and Jean Goldberg ("Pls.' Br."), (ECF No. 85).)

On July 2, 2015, counsel for NYU and NYUHC filed notices of appearance on behalf of the Individual Defendants. (Notice of Apperances, (ECF Nos. 88-89).) The Individual Defendants filed their opposition to Plaintiffs' motion and cross-moved for dismissal due to insufficient process on August 7, 2015. (Memorandum of Law in Support of Defendants' Opposition to

Plaintiffs' Motion for Default Judgment and Cross-Motion to Dismiss the Individual Defendants ("IDs.' Br."), (ECF No. 96).)

## II.    Cross-Motion to Dismiss for Insufficient Service of Process

Before addressing Plaintiffs' motion for default judgment, this Court first addresses whether service of process was procedurally proper to confer personal jurisdiction over the Individual Defendants. *Sinoying Logistics Pte. Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (stating its agreement with sister circuits that "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant"); *Licci v. Lebanese Canadian Bank SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (stating that "[t]he lawful exercise of personal jurisdiction by a federal court requires," *inter alia*, "plaintiff's service of process upon the defendant [to] have been procedurally proper").

"In considering a motion to dismiss pursuant to 12(b)(5)[, Fed.R.Civ.P.,] for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Mende v. Milestone Tech.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citation omitted). "When a defendant raises a Rule 12(b)(5) challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy."[5] *Id.* (citation and internal quotation marks omitted).

---

[5] It is worth noting that "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005). The Individual Defendants maintain that they did not have actual notice of this lawsuit (although their counsel has been representing the institutional defendants for almost seven years by the time they claim to have received actual notice). Additionally, the Individual Defendants promptly opposed Plaintiffs' motion for default judgment on the basis of insufficiency of process. Any prejudice to Plaintiffs resulting from the fact that almost eight years has passed since service was allegedly made is arguably just as attributable to Plaintiffs' delay in moving for default. Accordingly, the burden of proving service process remains on the Plaintiffs.

Federal Rule of Civil Procedure 4(e)(1) permits service of process pursuant to the laws of the state in which the district court is located. The Plaintiffs maintain that they served the Individual Defendants in accordance with section 308(2) of the New York Civil Practice Law and Rules. (Pls.' Br. at 1.) Section 308 provides, in relevant part, that personal service may be made by "delivering the summons . . . to a person of suitable age and discretion at the actual place of business . . . of the person to be served", and mailing the summons . . . to the person to be served at his or her actual place of business." N.Y. CPLR 308(2) (McKinney). This method of service is often referred to as "substituted service" because personal delivery of service is not made directly to the defendant. *See e.g.*, *Sartor v. Utica Taxi Ctr., Inc.*, 260 F. Supp. 2d 670, 674 (S.D.N.Y. 2003) (quoting New York cases using term).

The Individual Defendants contend that New York Courts have defined the phrase "actual place of business" as a place where the defendant is physically present with regularity. (IDs.' Br. at 12 (citing *Underwood v. Shukat*, No. 01-cv-786(HB), 2002 WL 1315597 (S.D.N.Y. Jun. 14, 2002) (citing New York cases)).) The Individual Defendants have submitted affidavits stating that they were not physically present with regularity at the Medical Science Building in which the Office of the General Counsel is located, and to which the Summons and Complaint were delivered and mailed. (Cohen Decl. at ¶ 3; Bensimon Decl. at ¶ 2; Goldberg Decl. at ¶ 2; Stines Decl. at ¶ 2; Stropkay Decl. at ¶ 2; Andrews Decl. at ¶ 2; Garcia Decl. at ¶ 2.). They argue that the delivery and mailing of the Summons and Complaint to the Medical Science Building was procedurally improper. The Individual Defendants each maintain that they were physically present with regularity across the street in Greenberg Hall, and service had to have been made at that location to comply with CPLR 308(2).

The Individual Defendants rely primarily on two cases to support their position.  First, in *Samuel v. Brooklyn Hospital Center*, a plaintiff commenced an action against Brooklyn Hospital Center ("BHC") and a physician to recover damages for medical malpractice.  88 A.D.3d 979, 979-80, 931 N.Y.S.2d 675 (2d Dep't 2011).  The plaintiff's process servers attempted to serve the physician on two occasions.  On the first, the process server delivered the summons and complaint to the supervisor of BHC's Health Information Management Department, located at 121 DeKalb Avenue in Brooklyn.  *Id.*  On the second, the process server delivered the summons and complaint to an individual who worked in BHC's Risk Management Department, which was located in the same building as the Health Information Management Department.  *Id.*  The physician, however, was not an <u>employee</u> of BHC, and his office was not located in the 121 DeKalb Avenue building but instead in a separate building on BHC's campus.  *Id.*  The court held that "[u]nder the circumstances of this case, the plaintiff failed to establish . . . that service was properly effected at [the defendant]'s actual place of business."  *Id.*

The second case the Individual Defendants principally rely upon is *Kearney v. Neurosurgeons of New York*, 31 A.D.3d 390, 391, 817 N.Y.S.2d 502 (2d Dep't 2006).  Like in *Samuel*, the plaintiff in *Kearney* sought to recover damages for medical malpractice.  *Id.*  The plaintiff's server attempted to serve the individual physician by delivering the summons with notice to the Director of Safety and Security, Communications, and Transportation located in the administration building of Burke Rehabilitation Center ("Burke").  *Id.*  The physician, however, was not an <u>employee</u> of Burke, and maintained an office in a separate building from the main administration building on Burke's campus.  As in *Samuel*, the court held that "[u]nder the facts of this case, the plaintiffs failed to establish . . . that service was properly effected at Neubardt's actual place of business."  *Id.*

Notably, both *Samuel* and *Kearney* cite *Glasser v. Keller*, 149 Misc. 2d 875, 567 N.Y.S.2d 981 (Sup. Ct. Queens Co. 1991) to support their holdings. *Samuel*, 88 A.D.3d at 980, 931 N.Y.S.2d 675; *Kearney*, 31 A.D.3d at 392, 817 N.Y.S.2d 502. In *Glasser*, the court confronted "whether a hospital, wherein a private surgeon has privileges and performs operations but by which he is not employed, constitutes his 'actual place of business' for purposes of effecting service of process pursuant to CPLR 308(2)." *Glasser*, 149 Misc. 2d at 875, 567 N.Y.S.2d at 981 (emphasis added). The defendant surgeon maintained offices in both Great Neck and Flushing, New York. *Id.* at 876, 567 N.Y.S.2d at 981. Additionally, "[h]is status at Booth Memorial Medical Center ["Booth"] was as an attending surgeon. That is to say, he was not an employee of the hospital but was allowed to and in fact did perform surgery there. He had a similar relationship with [two other hospitals]." *Id.* The process server delivered a copy of the summons and complaint to Booth's Risk Management Office, and then mailed a copy of each to the defendant at Booth. *Id.* The court held that service was improper. *Id.* at 878, 567 N.Y.S.2d at 983. It reasoned:

> Personal service by way of delivery to a suitable person at a defendant's actual place of business is allowed because it is presumed that the business relationship between the deliveree and the defendant will induce the prompt redelivery of the summons to the defendant. For that reason, service is invalid if the delivery is made at a place where the defendant maintained his place of business in the past, but does not do so at the time of service. The fact that a defendant does business in a given place does not necessarily make it *his* place of business. There must be an identification of the defendant's business with the place, such as comes with employment or proprietorship, which is missing from [defendant]'s relationship with Booth Memorial.
>
> . . . . .
>
> Here, it is certainly true that the defendant . . . had a professional relationship with Booth Memorial, which entailed his physical presence there on a regular basis to render professional services.
>
> . . . .

> There is nothing in this case[, however,] to indicate that [the
> defendant] held out Booth Memorial as his actual business address,
> or indicated that his status there was an employee, or did any thing
> [sic] to indicate that he was amenable to service there.

*Id.* at 878-79, 567 N.Y.S.2d at 982.

Even though the defendant in *Glasser* was "physically present with regularity" at the location at which he was served, the court held that service was improper because he was not an employee of that institution. Absent a formal "business relationship" between the defendant and the person to whom service was delivered, such as an employment relationship, the presumption that the recipient of service would redeliver the summons to the defendant was not a reasonable one. *See Glasser*, 149 Misc. 2d at 878-79, 567 N.Y.S.2d at 982. Significantly, the courts in both cases relied upon by the Individual Defendants noted that the defendants whom the plaintiffs attempted to serve were not employed by the facilities at which service was made. *Samuel*, 88 A.D.3d at 980, 931 N.Y.S.2d 675 (noting that defendant "had privileges" at BHC, indicating same relationship to medical facility as defendant had to facility in *Glasser*); *Kearney*, 31 A.D.3d at 392, 817 N.Y.S.2d 502 (stating that defendant was not an employee without providing any other information regarding relationship to medical facility).

Contrary to the Individual Defendants' suggestion, the phrase "actual place of business" is not necessarily synonymous with being "physically present with regularity." Indeed, "[n]o definitive test has emerged as to the meaning of actual place of business." *Ascencio-Sutphen v. McDonald's Corp.*, 16 Misc. 3d 184, 187, 838 N.Y.S.2d 403, 406 (Sup. Ct. Bronx Co. 2007) (quoting Alexander, Practice Commentaries, McKinney's Consolidated Laws of New York, Book 7B, C308:3(b), p. 22.). The case law demonstrates that whether service has been made at one's "actual place of business" is a fact- and circumstance-specific inquiry. *Kearney*, 31 A.D.3d at 391,

817 N.Y.S.2d at 502 ("Under the facts of this case . . . ."); *Samuel*, 88 A.D.3d at 980, 931 N.Y.S.2d at 675 ("Under the circumstances of this case . . . .").

In *Ascencio-Sutphen v. McDonald's Corp.*, the court confronted "whether an independent contractor security guard's assignment at a franchise restaurant can be considered his actual place of business for purposes of securing jurisdiction over him by delivery of service of process upon the franchise manager." 16 Misc. 3d 184, 185, 838 N.Y.S.2d 403, 405 (2007). The court held that it could not, despite the fact that the security guard was physically present with regularity at the franchise restaurant, *i.e.*, McDonald's. 16 Misc. 3d at 189 n.1, 838 N.Y.S.2d at 408 n.1 ("Although it may be argued that [the defendant] at the time of the attempted service reported to the McDonald's on a regular basis for the purposes of his employment with [the independent contracting firm] and the provision of security services to McDonald's, such physical presence and 'regularity' does not and should not equate with actual place of business, where other means of service were available."). The court explained:

> Plaintiffs failed to demonstrate a sufficient relationship between McDonald's and [the defendant] that would create a duty, obligation or reasonable reliance that redelivery would occur. Such a duty or obligation is integral in an employer/employee relationship, having its genesis when the employer requires fundamental history and information from its employees, such as name, address, telephone number, social security number and possibly other family and tax information, especially where benefits are involved. This dynamic is not present with an independent contractor and the presumption of redelivery based upon this status is merely a hope or a wish of accomplishment.

*Id.* Like the courts in *Glasser* and its progeny, the court in *Ascencio-Sutphen* looked to see whether there was an employment relationship to determine whether the plaintiff's process server could have reasonably relied on the person to whom delivery was made to redeliver the summons and complaint to the defendant.

12

*New York State Higher Education Services Corp. v. Srebrenik*, confronted facts very similar to those presented in this case. 148 Misc. 2d 837, 838, 562 N.Y.S.2d 363, 364 (Civ. Ct. 1990). In *Srebrenik*, "plaintiff claim[ed] to have delivered a copy of the summons and complaint to defendant's co-worker, . . . at St. Luke's Hospital, at 421 West 113th Street." *Id.* at 840, 562 N.Y.S.2d at 365. Although the defendant was employed by St. Luke's, "the [St. Luke's] hospital complex consist[ed] of approximately eleven buildings and [the defendant] worked in the Department of Psychiatry located at Amsterdam Avenue and 114th Street. In addition, defendant testified that she never received the complaint and, in fact, only became aware of the judgment entered against her in a later obtained credit report." *Id.* at 838, 562 N.Y.S.2d at 364. Significantly, the location at 421 West 113th Street did not "contain administrative or personnel offices, but rather house[d] medical records and some patient services [were] performed there." *Id.* at 840, 562 N.Y.S.2d at 365. The defendant testified that she did not know the co-worker to whom delivery was made. *Id.*

The court began analyzing whether service at the 421 West 113th Street location complied with CPLR 308(2) with a review of relevant case law, and stated: "[t]he authorities cited illustrate that if the place of business was large and at more than one single location, service on the administrative or personnel office would satisfy CPLR 308(2) since the staff of these offices have an obligation to meet the employee's needs." *Id.* The court then applied that principle to the facts before it:

> St. Luke's is a vast institution consisting of a number of buildings. The administration or personnel office is not located in the building at 421 West 113th Street. There was no testimony as to [the service recipient]'s position, however her employment at a nonadministrative department would seem to indicate that she would not be responsible to deliver the summons and complaint.

13

> Thus, delivery of the summons and complaint to a department
> unrelated to that of defendant and one that does not include hospital
> administration could not be relied upon to come to defendant's
> attention as the statute contemplates.

*Id.* This passage strongly suggests that had delivery been made to an employee in an administration department, even if that department was located in a different building than the one in which the plaintiff worked and was physically present with regularity, the *Srebrenik* court would have found service to be effective.

There are several facts that are relevant to a determination of whether delivery has been made at a defendant's "actual place of business" for purposes of effecting service of process pursuant to CPLR 308(2). Whether the plaintiff's process server could have reasonably relied on the person to whom delivery was made to redeliver the summons and complaint to the defendant is particularly relevant. Answering this inquiry requires the court to consider both the defendant's relationship to the specific organization with which the recipient is affiliated, as well as the recipient's role at that organization. The defendant's regular, physical proximity to the location at which delivery is made is also relevant both to this inquiry and the ultimate determination. *See Cho v. Song*, 166 Misc. 2d 129, 631 N.Y.S.2d 484 (1995) (holding that service on a medical-malpractice defendant was improper where service of process on his secretary at the campus of university at which he taught was not at his "actual place of business," even though he maintained office and records on campus, because he was on teaching sabbatical in Korea and had closed his medical office when service was made); *Anon Realty Assocs., L.P. v. Simmons Stanley Ltd.*, 153 Misc. 2d 954, 957, 583 N.Y.S.2d 778 (2d Dep't 1992) (stating "physical proximity of the defendant to the place of service" is relevant consideration under 308(2) and finding regularly doing business "thousands miles away" from place of service made service defective). Whether service has complied with CPLR 308(2) depends on whether the "method of service was 'reasonably

14

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Anon Realty Assocs.,* 153 Misc. 2d at 956, 583 N.Y.S.2d 778 (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiffs' process server delivered nine copies of the Summons and Complaint, one for each named defendant, to Jennifer Kitsonidis, an administrative employee in the Office of General Counsel for NYUHC. She accepted all nine of the copies. Each of the Individual Defendants was also employed by NYUHC, and worked just across the street. Under the facts and circumstances of this case, it was reasonable for Plaintiffs' process server to rely on Kitsonidis to redeliver the Summons and Complaint to each of the Individual Defendants.[6] This is especially true considering Kitsonidis was authorized to and in fact accepted service in this action on behalf of NYU and NYUHC, entities sued under the doctrine of *respondeat superior* for the acts of the Individual Defendants.[7] All Defendants are represented by the same legal counsel. *Cf. Gleason v. McBride*, 869 F.2d 688, 693 (2d Cir. 1989) (in Rule 15 context, where two defendants share attorney and attorney has reason to believe second defendant will be added, second defendant is presumed to be on notice).

Whether or not the process server could have effected service by going to Greenberg Hall and delivering the Summons and Complaint to employees in the Facilities Management

---

[6] Notably absent from Kitsonidis née Faria's affidavit is a declaration that she never receives service on behalf of natural-person defendants. (*See generally*, Kitsonidis Decl.)

[7] The fact that NYUHC or their counsel notified the Individual Defendants of the Plaintiffs' request for entry of default further demonstrates the reasonableness of the process server's belief that the person authorized to accept service on behalf of the Individual Defendants' corporate employer would redeliver the Summons and Complaint to the Individual Defendants. Only where a co-defendant's interests are adverse will such a belief be unreasonable and invalidate delivery of process on the co-defendant. *See Martinez v. McSweeney*, 41 Misc. 3d 1232(A), 981 N.Y.S.2d 636 (Sup. Ct. Queens Co.). Not only were NYUHC's interests not adverse to those of the Individual Defendants in this case, they were aligned.

Department and Environmental Services Division, respectively, there is nothing to suggest that this would be the only way for Plaintiffs to have complied with CPLR 308(2). Indeed, it is well-settled "that a defendant can have more than one 'actual place of business' for the purpose of service of process under CPLR 308." *Sartor*, 260 F. Supp. 2d at 678 (citing *Velez v. Vassallo*, 203 F. Supp. 2d 312, 325 (S.D.N.Y. 2002) (citing *Gibson, Dunn & Crutcher LLP v. Global Nuclear Servs. & Supply, Ltd.*, 280 A.D.2d 360, 721 N.Y.S.2d 315, 317 (1st Dep't 2001) and *Columbus Realty Inv. Corp. v. Weng–Heng Tsiang*, 226 A.D.2d 259, 641 N.Y.S.2d 265, 266 (1st Dep't 1996)).

The Individual Defendants submit two other arguments as to why service was improper. First, they argue that they did not authorize Kitsonidis to receive service on their behalf. (*See* Memorandum of Law in Further Support of Defendants' Cross-Motion to Dismiss the Individual Defendants, (ECF No. 131), at 5.) Authorization, however, is not required. All that is required is that the person to whom service is made be of "suitable age and discretion." *City of New York v. VJHC Dev. Corp.*, 125 A.D.3d 425, 425, 2 N.Y.S.3d 453 (1st Dep't 2015) ("[A]uthority is not a relevant criterion with respect to service on individuals."); *see* 308(2). The Individual Defendants do not contend that Kitsonidis was less than eighteen years of age at the time of service, or lacked the "discretion" necessary to make her suitable to accept service.

Second, the Individual Defendants argue that Plaintiffs have not carried their burden to demonstrate that they in fact mailed the Summons and Complaint within the time period as specified by CPLR 308(2), if at all, because the amendment to the process server's affidavit occurred two years after the filing of the initial affidavit, and did not attach a mailing certificate or other evidence to demonstrate that a mailing occurred. (IDs.' Br. at 13.) "[A] process server's affidavit of service establishes a prima facie case of the . . . method of service . . . ." *Old Republic*

16

*Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002). The amended affidavit is sufficient to make out a prima facie case that the process server mailed the Summons and Complaint as specified in CPLR 308(2). That the process server did not amend his affidavit until opposing counsel brought this particular deficiency to Plaintiffs' attention is insufficient to refute the process server's affirmation.[8]

The Individual Defendants point out, however, that although a process server's affidavit of service establishes a prima facie case of the account of the method of service, "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* (*See* IDs.' Br. at 14-15.) Accordingly, they argue that because each of the Individual Defendants have denied that they received service, and "the burden of proving service lies with Plaintiffs, . . . there is no evidentiary basis for this Court to find that Plaintiffs have carried their burden of proving that service was made under C.P.L.R. § 308(2)." (IDs.' Br. at 15.)

No hearing is required because under these circumstances their affidavits are insufficient to rebut the prima facie proof of proper service established by the process server's affidavits. *See Edan v. Johnson*, 117 A.D.3d 528, 529, 985 N.Y.S.2d 548, 550 (1st Dep't 2014) (stating that traverse hearing is not required when claims are insufficient to rebut prima facie case of service); *see also Old Republic*, 301 F.3d at 58 (holding that hearing was unnecessary where sworn affidavit did not refute "specific facts" established by process server). This Court has already held that based on the facts and circumstances of this case, service was made at the Individual Defendants' "actual place of business." Kitsonidis's affidavit makes clear that she received nine copies of the

---

[8] This Court notes that "[t]he failure to file [proper] proof of service is a procedural irregularity, not a jurisdictional defect, that may be cured by motion or sua sponte by the court in its discretion pursuant to CPLR 2004. *Khan v. Hernandez*, 122 A.D.3d 802, 803, 996 N.Y.S.2d 667, 668 (2d Dep't 2014).

Summons and Complaint—*i.e.*, one each for NYU, the NYUHC, and the seven Individual Defendants—at the Office of the General Counsel.[9]  There is no doubt that these copies were hand delivered, even though the Individual Defendants never received them.  Their failure to receive the hand-delivered copies, however, did not render Plaintiffs' service insufficient under the first prong of CPLR 308(2).  Indeed, if proof of actual receipt was a requirement, the whole premise underlying substituted service would be undermined.  Once the Plaintiffs delivered a copy of the Summons and Complaint to Kitsonidis, a person of "suitable age and discretion," Plaintiffs fulfilled their obligation with regard to this portion of the statute regardless of what subsequently happened to those copies.  That the Individual Defendants also never received the copies mailed to this location is unsurprising, since their employer never provided the hand-delivered copies either.  Based on these facts and circumstances, the Individual Defendants' averments that they did not receive the Summons and Complaint by hand delivery or mail are insufficient to rebut the process server's affidavit that the copies were, in fact, hand delivered and mailed in compliance with CPLR 308(2).[10, 11]

---

[9] Kitsonidis states that "it appears that nine copies of the Summons and Complaint were delivered to the Dean's Office, which at that time was located in the same suite as the Office of the General Counsel . . . . They were delivered on June 19, 2008 and were given to me." (Kitsonidis Decl. at ¶ 5.)  Although her affidavit suggests the delivery was made to the Dean's Office and later delivered to her in the Office of the General Counsel, the process server's affidavit refers to Kitsonidis by name, and provides a detailed physical description of her.  Kitsonidis does not claim that the physical description is inaccurate.  Absent any other explanation for this descriptive information, this Court finds that the deliveries were made to Kitsonidis directly.

[10] Kitsonidis's declaration did not indicate whether or not the mailed copies were received by her Office even though she reviewed both the process server's original and amended affidavits.  (Kitsonidis Decl. at ¶ 5.)

[11] Because this Court has ruled that service of process complied with CPLR 308(2), it does not address the parties' arguments related to waiver of the insufficiency of process defense.  Nor does it reach related issues, such as whether good cause exists to extend the time for proper service, laches, or the shifting of the burden of proof related to service of process.  *See generally*, *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005); *Santos v. State Farm Fire & Ins. Cas. Co.*, 902 F.2d 1092 (2d Cir. 1990); *Vozeh v. Good Samaritan Hosp.*, 84 F.R.D. 143 (S.D.N.Y. 1979).  Still, this Court notes that the Second Circuit has stated that

### III.    Motion for Default Judgment

Having established that this Court has personal jurisdiction over the Individual Defendants, this Court now turns to Plaintiffs' motion for default judgment.

Rule 55 of the Federal Rules of Civil Procedure governs default. The rule provides for a two-step process: first, the entry of default, and second, the entry of a default judgment. Fed. R. Civ. P. 55(a)-(b). If the court enters a default judgment, which is a final adjudication, the defaulting party may seek to set aside the judgment for "good cause." Fed. R. Civ. P. 55(c).

"The dispositions of motions for . . . default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (collecting cases). Several factors may be considered when exercising such discretion, including whether the default is largely technical, whether the moving party has been substantially prejudiced by the delay involved, the harshness of any effect of a default judgment, and whether the court thinks it would be obliged to set aside the default on defendant's motion. *Wing v. E. River Chinese Rest.*, 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (citing Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2685).

---

> [i]n determining whether waiver or forfeiture of objections to personal jurisdiction has occurred, . . . all of the relevant circumstances [are considered]. It is well established that a party forfeits its defense of lack of personal jurisdiction by failing timely to raise the defense in its initial responsive pleading. But there are various additional reasons a defendant may be estopped from raising the issue. A court will obtain, through implied consent, personal jurisdiction over a defendant if the actions of the defendant during the litigation amount to a legal submission to the jurisdiction of the court, whether voluntary or not.

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) (internal alterations, citations, and quotation marks omitted). *See supra* note 4.

Default judgments should be entered sparingly because they are "the most severe sanction which the court may apply," and this circuit has "a strong preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citations internal quotation marks omitted); *see State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 168 (2d Cir. 2004) ("Default judgments are generally disfavored and are reserved for rare occasions." (citation and internal quotation marks omitted)).

Given that the Individual Defendants submitted sworn affidavits that they did not receive actual notice of the lawsuit pending against them until Plaintiffs sought the entry of default, and counsel appeared on their behalf immediately after receiving notice and evinced their intent to defend, default judgment is inappropriate. Furthermore, the Plaintiffs will not be substantially prejudiced by the failure to enter a default judgment in this instance since their claims against the Individual Defendants were previously dismissed and only recently reinstated. Accordingly, Plaintiffs' motion for the entry of default and default judgment is DENIED.

## IV.    Conclusion

Plaintiffs' motion for entry of default and default judgment is DENIED. The Individual Defendants' cross-motion to dismiss the Individual Defendants for insufficiency of service of process is also DENIED.

The Clerk of Court is directed to close the motions docketed at ECF Nos. 83 and 106.


Dated: March 17, 2016
         New York, New York

                                           SO ORDERED:

                                           *George B Daniels*
                                           GEORGE B. DANIELS
                                           United States District Judge